THE OMAHA & ST. LOUIS RAILWAY COMPANY v. THE WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY *et al., Appellants.*

DIVISION ONE.

1. **Mortgage**: SUBSEQUENTLY ACQUIRED PROPERTY. A clause in a mortgage, including subsequently acquired property, real or personal, is valid.

2. ——— : ——— : RAILROAD. A railroad company executed a mortgage on its entire line of road between named points "as said railroad now is or may be hereafter constructed, maintained, operated or acquired, together with all the privileges, rights, franchises, real estate, right of way, depots, depot grounds, sidetracks, water tanks, engines, cars and other appurtenances thereto belonging." *Held*, that the mortgage covered land subsequently purchased by the company near a depot on the line of its road, and a hotel erected thereon for the purpose of an eating house and to accommodate the employes of the company, passengers and other persons.

*Appeal from Gentry Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

AFFIRMED.

*F. W. Lehmann* and *G. S. Grover* for appellants.

The title to this lot did not pass to the plaintiff under the mortgage of February 15, 1879, as it was not specifically described in that instrument, and it was not in any sense an appurtenance belonging to the railroad therein conveyed. 1 Bouvier's Law Dict., title, Appurtenances, p. 136; Coke on Littleton, sec. 184, p. 121; *Phila. v. Railroad*, 58 Pa. St. 253; Jones on Railroad Securities, sec. 104; *Bank v. Tennessee,* 104 U. S. 493; *Humphreys v. McKissock*, 2 Sup. Ct. Rep. No. 28, June 1, 1891, p. 779; *Parish v. Wheeler,* 21 N. Y. 494; *Railroad v. Livermore*, 47 Pa. St. 455; *State v. Commissioners*, 23 N. Y. Law, 510; *Railroad v. Burlington*, 28 Vt. 193; *State v. Railroad*, 48 Md. 50; *Railroad v. Atlanta*, 66 Ga. 104; *Railroad v. Railroad*, 58 Miss. 905; *Walsh v. Barton*, 24 Ohio St. 28; *Railroad v. Supervisors*, 29 Wis. 116; *Railroad v. Milwaukee*, 34 Wis. 271; *Bridge Co. v. Curtis*, 103 Ill. 410; *Frey v. Drakes*, 6 Neb. 1; *Barrett v. Bell*, 82 Mo. 110.

*Theodore Sheldon* for respondent.

BLACK, J.—The plaintiff corporation brought this suit in the Gentry county circuit court, against the Wabash, St. Louis & Pacific Railway Company, the Wabash Western Railway Company and J. W. Blanchard, praying for a decree requiring Blanchard to convey to plaintiff a half block of ground in Stanberry, Gentry county. The circuit court rendered a decree as prayed for, from which the railroad companies appealed. Blanchard did not join in the appeal.

The facts are in substance these: On the fifteenth day of February, 1879, the St. Louis, Kansas City & Northern Railway Company, a corporation organized under the laws of this state, executed a deed of trust in the nature of a mortgage to the United States Trust

Company, to secure certain bonds upon that part of its road beginning at Elm Flats, in Daviess county, and extending through that and three other counties in this state, Gentry county being one of them, and through several counties in the state of Iowa, to Council Bluffs. In November, 1879, that company, by consolidation with the Wabash Railway Company, became the Wabash, St. Louis & Pacific Railway Company. On the twenty-sixth of June, 1880, there was conveyed to defendant Blanchard the half block of ground at Stanberry, now in question, for the consideration of $2,100, which was paid by the Wabash, St. Louis & Pacific Railway Company. Blanchard, it is conceded, held the title in trust for the company.

During that year the company erected a hotel upon the land so purchased, at a cost of $9,000. This half block is separated from the railroad right of way and depot by a street. The hotel was built in part for the purpose of an eating house, but was soon abandoned for that purpose, it being more convenient to stop the trains for meals at another station. Stanberry was a new place, built up with the railroad, and at the end of a division. There was no hotel or boarding house there, and the chief purpose in building the hotel was to furnish accommodations for the employes. The title was taken in the name of Blanchard, with a view of selling the property as soon as a suitable purchaser could be found. The property was leased out to various persons until the building was destroyed by fire, which was in February, 1886.

On the twenty-second of June, 1885, the United States Trust Company commenced a suit in the Gentry circuit court to foreclose the before-mentioned mortgage. The case was removed to the United States circuit court for the western district of Missouri, where a decree of foreclosure was entered in 1886. Like proceedings were had in the state of Iowa, and a decree of foreclosure was there rendered by the circuit court of

the United States for the southern district, western division, in October, 1886. The Wabash, St. Louis & Pacific Railway Company, the Central Trust Company and James Cheney were made defendants in both of these suits, but Blanchard was not made a party. The road was sold under these foreclosure decrees to Beach, in 1887, who conveyed the same to the present plaintiff. These decrees describe the property the same as it is described in the mortgage. The plaintiff stands on this title.

On the first of June, 1880, the Wabash, St. Louis & Pacific Railway Company conveyed this same line of road, called the Omaha division, and other property to the Central Trust Company and James Cheney, in trust to secure certain bonds. This mortgage was also foreclosed by a decree rendered in 1884. The property was sold under this decree, subject to the above-mentioned mortgage, to the United States Trust Company, dated the fifteenth of February, 1879. The title of the Wabash Western Railway Company to the property in question, if any it has, is derived from the purchasers at that sale.

From the foregoing statement it will be seen the important question here is whether the mortgage from the St. Louis, Kansas City & Northern Railway Company to the United States Trust Company, dated the fifteenth of February, 1879, covered this after-acquired real estate. That mortgage contains an after-acquired property clause; and it must be now taken as well-settled law that such a clause is valid as to subsequently acquired property, real or personal. *Pennock v. Coe*, 23 How. 117 ; *Dunham v. Railroad*, 1 Wall. 254 ; *Thompson v. Kneeland*, 138 U. S. 414. The case last cited shows that this is true as to property to which the company acquires the equitable title as well as to that to which it acquires the legal title.

The real question, therefore, is whether this property is fairly embraced within the terms of the

mortgage. The mortgage covers the entire line of road between the designated points "as said railroad now is, or may be hereafter, constructed, maintained, operated or acquired, together with all the privileges, rights, franchises, real estate, right of way, depots, depot grounds, sidetracks, water tanks, engines, cars and other appurtenances thereto belonging." The question to be determined does not depend upon the technical meaning of the word "appurtenances" as seems to be argued by counsel for defendants. The mortgage in clear terms includes after-acquired "real estate," and these words cannot be confined to such real estate as may be used for right of way, depot grounds, side-tracks and tanks. They do not, of course, mean or include real property not used in connection with the road, but they do mean any real estate acquired for use in the operation of the railroad proper. Now, it is to be remembered that Stanberry was the end of the division, and there was no hotel or boarding house at that place. Under these circumstances the property was purchased and the hotel erected for these purposes; namely, *first*, for an eating house; *second*, to accommodate the employes of the company, and, *third*, to accommodate passengers and other persons. Had this hotel been erected on the right of way or depot grounds, though such grounds were acquired after the date of the mortgage, it seems to us there can be no doubt but it would become subject to the mortgage. The circumstance that it is separated from the passenger depot and right of way by a street is immaterial, the property being convenient and suitable for the designated purposes. As has been said, the property was purchased and the building erected, not as an independent speculation, but as an incident and aid in operating the railroad. Surely the company could, as a legitimate part of its operations, provide an eating house, and could provide accommodations for its employes, there being no hotel or boarding house at the place. Grounds obtained and

a structure erected for such purposes would be part of the property of the company owned and used in the operation of the road. The addition of the ordinary hotel feature does not make it an independent, outside enterprise. In our opinion, this property is part and parcel of the railroad property, and is covered by the mortgage. This is the conclusion reached by the circuit court of the United States for the southern district of Iowa; for that court ordered the moneys arising from the insurance on the building paid over to the receiver, who represented the first mortgage creditors. 32 Fed. Rep. 480.

The chief question in this and like cases is, whether the parties to the mortgage intended that the after-acquired property, the subject of the litigation, should be subject to the lien of the mortgage. 1 Jones on Mortgages [4 Ed.] sec. 153. That the parties intended all such property as this should come under and subject to the mortgage is, we think, clear and beyond doubt; for the mortgage professes to convey every part and parcel of the line of railroad and all real estate then or thereafter acquired and thereto belonging.

The defendants press upon our attention *Humphreys v. McKissock, Receiver*, 140 U. S. 304. That controversy arose out of the mortgage now in question. There the mortgagor, by its new name of the Wabash, St. Louis & Pacific Railway Company, and other railroad companies, subscribed for stock in the Union Elevator Company at Council Bluffs; and the question was whether the mortgage now in question covered that stock or any interest in the elevator property. It seems the trial court held that it did, but the supreme court of the United States reversed the judgment. In doing so it was held: *First,* that the elevator company and railroad company were separate corporations, that the railroad company was simply a stockholder in the elevator company and had no interest in the property of that corporation which it could transfer or mortgage;

*second*, that the stock held by the railroad company in the elevator company was not an "appurtenance" to the railroad property, and, hence, was not covered by the mortgage to the United States Trust Company. That case is wholly unlike the one now in hand, as must be apparent from this statement. The present controversy does not turn upon any proposition of law involved in that case, and that case is, therefore, inapplicable to the one in hand.

As we hold the mortgage attached to the property now in question, the other questions discussed in the briefs become immaterial, and out of the case. The judgment is, therefore, affirmed. BARCLAY, J., absent; the other judges concur.