## LONGWORTH et al., Appellants, v. SEDEVIC.

### Division One, November 19, 1901.

1. **Street:** STATUTORY DEDICATION: PLAT: ADOPTION: ESTOPPEL. There can be no statutory dedication of land to public use by a person who does not own it. But one by describing the property bought by him according to a plat made by one who did not own the land, adopts the plat and with it the dedication of the street that appeared on the plat, and thereby ratifies and makes complete at common law the imperfect statutory dedication; and if all parties who own property adjoining the street for many years after such acceptance and ratification treated it as a street, they are estopped from saying it is not a street.

2. ———: ———:‘———: ———: LIMITATION. Fourteen years open and continuous adverse possession and user of a street by the public whether there was a valid statutory or common-law dedication thereof or not, is sufficient to vest a right to it as a street in the public by limitation.

3. **Closing up Street Dedicated by User and Limitation:** SUIT TO RESTRAIN: PARTIES. Where the public has a right to maintain an action to prevent a private citizen from closing up a street of which there has been a common-law dedication, or which because of continuous user for the statutory period of limitation has given the public a right to it as a street, a private citizen who has an especial interest in the street because it affords him access to the side and rear of his property, and because its existence along his lot makes it a corner lot which it would not be if the street were closed, also has the right to maintain an action to prevent its being closed up.

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

REVERSED.

*R. Lee Mudd* for appellants.

(1) The plaintiffs claim that the strip in question is a pub-
lic highway, first, by prescription, secondly, by common law
dedication, and thirdly, in connection therewith, that, whether
by prescription or by dedication, the defendant is estopped to
deny the existence of a public easement in the premises. The
mere fact that the strip was not open in its entirety, as indi-
cated on the plat, or that it was a *cul-de-sac* does not deprive it
of the essentials of a highway. Elliott on Roads, pp. 1 and 7; 2
Beach on Public Corporations, sec. 1448; Wood on Nuisances,
sec. 235; Price v. Inhabitants, etc., 77 Mo. 447. It is a high-
way by prescription. The evidence of the public user of the
strip comes from every witness and is sufficient, because "the
existence of a highway by prescription is generally proved by
the parol evidence of witnesses that the road in question has
been known and used as a highway or road common to all the
people for the period of prescription." Elliott on Roads, 138.
The strict particularity of proof to establish the adverse intent
is not so requisite on a question of public user as in regard to an
individual adverse possession, and, in any case, acts alone are
sufficient proof of the intent. 2 Dillon on Mun. Cas. (3 Ed.),
639, and notes; Draper v. Chute, 25 Mo. 203; State v. Davis,
27 Mo. App. 624; State v. Bradley, 31 Mo. App. 319; Price v.
Town of Breckenridge, 92 Mo. 378; 5 Encyclopaedia of Law
(1 Ed.), 407; Elliott on Roads, 136. (2) It is also a high-
way by common-law dedication. In a case where there is an
offer or attempt to dedicate and such offer is followed by adverse
use by the public under a claim of right, no formal acceptance
by public officials is required; and, in such a case, it matters
not who, in fact, owns the land. Price v. Town of Brecken-
eidge, 92 Mo. 385; City v. Heirs, etc., 36 Mo. 337; Baker v.
Vanderburg, 99 Mo. 393; Milling Co. v. Riley, 133 Mo. 584;
McShane v. City of Moberly, 79 Mo. 41. All who buy with
reference to a general subdivision plan, or whose lands are
affected thereby, have the right to insist upon all the dedication
privileges arising out of the general plan. Elliott on Roads,

112; 5 Encyclopedia of Law (1 Ed.), p. 405, note, and 410, note; 3 Washburn on R. C. Prop. (3 Ed.), 71; Rutherford v. Taylor, 38 Mo. 315; Railroad v. Village, etc., 36 Ohio St. 631. Acceptance by the public, may, of course be shown by the acts and conduct of public authorities adopting the space as a highway, and this may be shown even by parol. Hunter v. Sandy, 6 Hill, 407; People v. Loehfln, 102 N. Y. 1; Railroad v. Village of Carthage, 36 Ohio St. 631; Wood on Nuisances, secs. 242, 249, 1453; 2 Beach on Pub. Cor., p. 1406; McKee v. St. Louis, 17 Mo. 184; 2 Dillon on Mun. Cor. (3 Ed.), 6216; Witherspoon v. Meridian, 69 Minn. 288. (3) Aside from the usual ordinary application of the law of prescription and dedication, the defendant's own testimony, and her introduction of the deed from the original common grantor, Wm. L. Long to Caleb Bowles, stating as one of its boundaries the words, the "town lots of Fenton," and "Main street of Fenton," etc.; and Vandover's deed to Gately making similar references, and giving one of its bound calls as "block 7;" and finally her deceased husband's deed containing the same references; and particularly too, the testimony of her surveyor, witness Schueck, substantially that the old plat and the boundary stated in the old deed from Long as the town lots of Fenton, etc., were necessary guides to locate defendant's boundaries at the point of location in dispute, each and all raise irresistibly, even out of her own defense alone, the bar of estoppel to deny the existence of the subdivision called the town of Fenton, and particularly the street or streets around the acknowledged block 7, for such recitals, more especially when followed by public user would afford a reasonable person notice, and this is sufficient to lay the basis of estoppel. Wade on Notice (2 Ed.), 17; 2 Herman on Estoppel, sec. 1147; Bigelow on Estoppel (5 Ed.), 370, and cases cited in note 1; 1 Greenleaf on Ev., sec. 6; Wood on Nuisances, sec. 249; St. Louis v. Wiggins Ferry Co., 15 Mo. App. 232; Tutt v. Spotts, 81 Pa. St. 339; In re Pearl Street, 111 Pa. St. 565; 2 Beach on Pub. Cor. p. 1406; Price v. Inhabi-

tants, etc., 77 Mo. 450. Long, Vandover and Gately were estopped, and if a common grantor be estopped then his grantee, heir, or successor in title is equally estopped. Herman on Estoppel, secs. 586, 587 and 1280; Hassenritter v. Kirchhoeffer, 79 Mo. 239. Fencing off a streetway and seeing others led to depend upon it as a public highway will constitute an estoppel and especially the making of the street in accordance with the defective dedication plat. Bigelow on Estoppel (5 Ed.), 636; Campbell v. City of Kansas, 102 Mo. 340. The owner may even estop himself by a single act *in pais.* 2 Herman on Estoppel, sec. 1148.

*R. H. Stevens* for respondent.

(1) There was no dedication by the plat made and recorded by Long, April 1, 1837. He was not the owner, having parted with his title to the property in controversy March 21, 1827, by his deed to Caleb Bowles. The plat itself calls for "the estate of Caleb Bowles, deceased," as bounding on the west. McShane v. Moberly, 79 Mo. 43; Hannibal v. Draper, 36 Mo. 332; Washburn, Easements, p. 243. The fact that the deed from Long to Bowles calls for "the town lots of Fenton" and " the Main street" of Fenton, without reference to a plat, and at a time when no plat is proved to have been in existence, can not be considered as calling for a street which never existed, even upon paper, until ten years later. (2) Even if the attempted dedication by Long in 1837 could have had any effect at the time, such effect would have been entirely done away with by the continuous, adverse and exclusive possession of the heirs of Caleb Bowles and Samuel T. Vandover and their tenants for a period of much more than twenty years prior to 1883. There never was any acceptance or user of the strip of land as a street during that period. (3) There was no dedication by estoppel or acts *in pais* in or subsequent to the year 1883. To constitute such dedication there must be proof of the

intent to dedicate, followed by acceptance. To prove such intent the evidence must be clear, cogent and unequivocal. Brinck v. Collier, 56 Mo. 166; Landis v. Hamilton, 77 Mo. 561; Baker v. Vanderburg, 99 Mo. 391; Bauman v. Boeckeler, 119 Mo. 199, 200; Washburn, Easements, pp. 204, 205, 209, 211, 237, 238. An opposite intent is shown by the deed itself from Gately and Welch to Longworth. It describes the Longworth property as acre property by metes and bounds, and calls for Main street as the eastern boundary, but fails to call for any Ferry street. The call for Main street, and care apparently taken not to recognize or call for any Ferry street, indicates that no such street was recognized. *Expressio unius exclusio alterius.* Field v. Mark, 125 Mo. 512; Angell on Highways, sec. 149; Washburn, Easements, pp. 237, 238. The strip of land never was recognized or used as a street or highway. There is no evidence that it was worked or used as a county road. Indeed, it led to no public place. Although the town was incorporated, which it seems would include this territory, it never worked or took charge of this land as a street. (4) The strip of land did not become a street or roadway by prescription or adverse user. There was no adverse user—no user at all. There was no road. It was not traveled. There was no place to travel to. There was no adverse or hostile claim by any public authority or by the public generally—nothing to indicate that the public insisted on driving through. There was nothing in the use of the strip of land inconsistent with use of it as a vacant lot, left open by the owner for his own convenience and the accommodation of his friends. Bauman v. Boeckeler, 119 Mo. 199; Field v. Mark, 125 Mo. 516; Brinck v. Collier, 56 Mo. 166; Washburn, Easements, pp. 152, 163; Plimpton v. Converse, 44 Vt. 164; 2 Beach on Injunctions, 1341, sec. 1370, and notes; Landis v. Hamilton, 77 Mo. 561; Baker v. Vanderburg, 99 Mo. 391.

Vol 165 mo—15

MARSHALL, J.—This is a bill in equity to enjoin the defendant from interfering with an easement the plaintiffs claim in an alleged street, called Ferry street, in the town of Fenton, in St. Louis county. The defendant had judgment in the trial court and the plaintiffs appealed.

The facts are these. On the twenty-eighth of March, 1818, Antoine Soulard conveyed four hundred and eighty arpens, including the premises claimed to constitute Ferry street, and also all the land now owned by the plaintiffs and defendant, to William L. Long. On the twenty-first of March, 1827, Long conveyed to Caleb Bowles one hundred and fifty-six arpens, of the four hundred and eighty arpens aforesaid. This conveyance also included the alleged Ferry street and all the property now owned by the plaintiffs and defendant. On the first of April, 1837, Long platted and laid out the town of Fenton. The plat showed a town of four blocks long and two blocks wide. Long divided the blocks into lots and also laid out and dedicated to public use streets. The streets running north and south he designated on the plat, Water street, Main street and Third street. Those running east and west he designated Ferry street, Mound street, Ward street and Grave street. This plat included a part of the land Long had sold ten years previously to Caleb Bowles, and also included the part of Ferry street shown on the plat lying between Main and Third streets, and also included the property owned by the plaintiffs. Prior to March 11, 1861, the heirs of Caleb Bowles sold all the property he had acquired from Long to John and Samuel Vandover. On the sixth of March, 1883, the Vandovers sold fifty-nine acres of the one hundred and fifty-six arpens, including the alleged Ferry street and the property owned by the plaintiffs to Thomas F. Gately and Peter J. Welch. On the same day Gately and Welch sold to the plaintiffs' ancestor, William Longworth, a portion of the fifty-nine acres they acquired from the Vandovers, describing it as, "being the northeast corner lot of block number 7 of the town of Fenton, in St. Louis county, Mis-

souri, beginning at said northeast corner of said block number
7, thence south 38.75 degrees west with the north line of said
block one hundred and fifty feet to a stone; thence 51.25 de-
grees east fifty feet, to the corner of lot formerly owned by one
Katzung, now owned by Lucy A. Longworth; thence north
38.75 degrees east one hundred and fifty feet to Katzung's now
Longworth's, northeast corner in the west line of Main street,
Fenton; thence north 51.25 degrees west fifty feet to the begin-
ning." Afterwards on the fifth day of May, 1885, Welch con-
veyed to Gately his interest in the fifty-nine acres, except the
lot sold to Longworth, and excepting 8.76 acres previously sold
to Stephen Bost.

On the sixth of May, 1885, Gately conveyed, by deed of
trust, all the fifty-nine acres, except the part sold to Stephen
Bost, "and excepting a lot of fifty feet by one hundred and fifty
feet in the northeast corner of block 7, town of Fenton, hereto-
fore sold to Wm. Longworth," to Julius Hunicke, trustee for
the Joseph Schneider Brewing Company. On the twentieth
of October, 1887, Hunicke foreclosed the deed of trust and con-
veyed the property to the Schneider Brewing Company, the
deed reciting the same exceptions as to the land sold to Stephen
Bost and the lot sold to William Longworth. On the fifteenth
of November, 1888, the Joseph Schneider Brewing Company
sold the land it acquired to Mathias Sedevic, and the deed con-
tained the same exceptions as to the land sold to Bost and to
Longworth. In none of these deeds is any mention made of
Ferry street; but Main street, upon which plaintiffs' property
fronts, is mentioned, and in all of them the plaintiffs' property
is described as a lot fifty by one hundred and fifty feet in the
northeast corner of block number 7, town of Fenton. There
is no block number 7 in the town of Fenton, except as it was laid
out on the plat of the town of Fenton, made and recorded by
Wm. L. Long on April 1, 1837.

The town of Fenton was incorporated in 1874, and Gately
and Longworth were members of the board of trustees for ten

or twelve years.  Longworth owned fifty feet, being lot 1 in block 7, fronting on Main street and bounded on the north by Ferry street, on which it abutted for one hundred and fifty feet.  On this he had a store, a stable and a warehouse, the store being also used for the postoffice. Longworth also owned a part of lot 2 in block 7, on which he had erected a residence. He and his heirs have been in possession of said property since his purchase in 1883.  Ferry street is described on the Long plat as being forty feet wide and has been open for the full depth of the Longworth lot, to-wit, one hundred and fifty feet, and has been continuously used by Longworth and his heirs and by the public generally as a street ever since 1883.  Gately owned block 6, which is bounded on the south by Ferry street, and that street separates the Longworth land and the Gately land, now and since 1888 owned by the defendant.  Gately built a fence along the north side of Ferry street for a distance westwardly of one hundred and fifty feet, and kept it in repair as long as he owned the property.  After Sedevic purchased the property in 1888 he rebuilt the fence and kept it in repair until 1897, when this controversy arose.  Longworth planted a row of trees inside that fence and put up hitching posts on the north side of the street and has maintained them ever since with the knowledge and acquiescence of Gately and Sedevic. The public has used it continuously as a street ever since 1883. The town trustees have treated it as a street and the records of the trustees show that not more than fifty dollars was in 1883 appropriated to repair it, but the evidence does not show whether it was repaired or not by the town, although there is gravel on it.  Gately always treated it and spoke of it as a street, as did also his grantors, the Vandovers, and Sedevic did likewise from the time he purchased in 1888.  In fact, it had always been so used and spoken of until this controversy arose in 1897, when the defendants for the first time took a different position and, claiming to own it, undertook to put up a house on it, which precipitated this contest.  The de-

fendant testified that when her husband was negotiating for the property, the fact that there was an open space between the property they wanted (block 6) and the Longworth property was spoken of by Mrs. Gately, and the advantages of having a lot with a side street running to the depth of the lot were pointed out to them; and she further testified that after her husband purchased the property (block 6) he repaired the fence along the north side of Ferry street and left the space covered by that street open in order to get back to a garden at the rear of their property.

The plat made by Long in 1837 complies with the statute, in form. It lacked dedicative force, however, as to Ferry street, because Long at that time did not own the land covered by Ferry street. He had sold that part of the original tract to Bowles ten years before the plat was made, acknowledged and recorded. So that as to Bowles, the attempted dedication of Ferry street by Long was a nullity. There was, therefore, no statutory dedication of Ferry street by Long. When Bowles's heirs conveyed the property to the Vandovers, the same condition was true. And it was likewise true when the Vandovers conveyed the fifty-nine acres to Thomas F. Gately and Peter J. Welch on March 6, 1883. Neither was there any common-law dedication by deed or estoppel by reason of anything that was said or done by the owners up to the time Gately and Welch acquired the property. On the same day that Gately and Welch acquired the fifty-nine acres they sold to William Longworth a part thereof, describing it as being "the northeast corner lot of block 7 of the town of Fenton," etc. The subsequent conveyances by Welch to Gately, and by Gately to the trustee of the Schneider Brewing Company, and by the trustee to the brewing company, and by the brewing company to defendant's husband, all recite that they convey all of the fifty-nine acres except 8.76 acres sold to Stephen Bost, "and excepting a lot of fifty feet by one hundred and fifty feet in the northeast corner of block 7, town of Fenton, heretofore sold to William

Longworth." Gately is the common grantor of both the plain-
tiffs and the defendant, of the property owned by each respec-
tively. In his deeds to both parties he refers to a lot in the.
northeast corner of block 7 of the town of Fenton. There
was no town of Fenton and no block 7 of the town of Fenton,
except such as was laid out and platted by Long in 1837.
Gately's deeds, therefore, had the effect of adopting the Long
plat and with it the dedication of the streets that appeared on
that plat. True, none of those deeds expressly refer to Ferry
street, but they do refer to the lot in the northeast corner of
block 7, and such a lot and such block 7 can only be located by
reference to the Long plat, and that plat shows that block 7
is bounded on the north by Ferry street and on the east by
Main street, thus making not only two boundaries of block 7,
but also identifying the lot intended to be conveyed as lot 1
of block 7. Such a description and such a reference in the
deeds to the respective parties litigant amount to an adoption
by Gately, of the Long plat, and ratify and make complete at
common law the imperfect statutory dedication by Long of
Ferry street. Gately's deeds, therefore, had the effect of a
common-law dedication by deed, and as Gately and Longworth
treated Ferry street as a public street from 1883 to 1887,
when Gately lost title to the property; and as Longworth and
defendant's husband, Mathias Sedevic, treated it as a street
from the time he acquired the property in 1888 until his death
about the year 1895, and as the defendant so treated it from
the death of her husband until the controversy arose in 1897,
they are estopped to say it is not a street. The town trustees,
of whom Gately and Longworth were two, treated it as a public
street from November, 1883, up to the beginning of this con-
troversy, and so far as appears, still so treat it, and, therefore,
the town authorities accepted it as a street. It has been open
to public use and has been actually and continuously used by
the public as a highway or street ever since 1883, without ob-
jection by anyone and with the knowledge of all persons, and,

hence, there was not only a common-law dedication of it as a street by Gately and an acceptance of it as a street by the town authorities, but there has also been fourteen years open, continuous and adverse possession and user of it as a street by the public, which is of itself sufficient to vest a right to it as a street in the public by limitation.    These acts and facts clearly show that Ferry street was a public street at the time this action was begun.    [Heitz v. St. Louis, 110 Mo. 618; Buschmann v. St. Louis, 121 Mo. 523; Milling Co. v. Riley, 133 Mo. 574.]   The public, therefore, had a right to maintain an action to prevent the defendant from closing up the street. And the plaintiffs, having an especial interest in the street because it affords access to the side and rear of their property, and because its existence along the side of their lot makes their lot a corner lot, which it would cease to be if the street was closed up, have a right to maintain an action to prevent its being closed up by the defendants.    [Milling Co. v. Riley, 133 Mo. l. c. 586.]

For these reasons the judgment of the circuit court dissolving the temporary injunction is reversed and judgment is entered here making the temporary injunction permanent. All concur.