KANSAS CITY & NORTHERN CONNECTING RAILROAD COMPANY v. BAKER et al.; HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Appellant.

Division One, July 1, 1904.

1. **CONVEYANCES. Town Plat: Dedication.** The execution and recording of a town plat and the marking thereon of "Reserved for Depot Grounds" by the owners of the land, is a dedication to the railroad company for railroad purposes. And the legislative act creating the Hannibal and St. Joseph Railroad Company authorized it to accept such a dedication.

2. **PUBLIC USE: Depot Purposes: Dedication.** The use of land by a railroad for depot grounds is an appropriation to a public use. And the designation of the land on the town plat, "Reserved for Depot Grounds," and the execution and recording of that plat, constituted a dedication to that public use.

3. **CONVEYANCE: Dedication: Sale by Reference to Plat.** The sale of lots by reference to a plat which has been executed and recorded by the owners of the land, constitutes a dedication thereof of "Reserved for Depot Grounds" a good dedication, even if the plat had been an incomplete dedication.

4. **LIMITATIONS: Lands Devoted to Public Use.** Possession begun since the enactment of the statute of 1865 of lands devoted to a public use, such as lands dedicated to a railroad company for depot purposes, can never ripen into title, however long that possession may continue.

5. ———: ———: **Begun Prior to Statute of 1865: Continuity.** Where the possession adverse to the railroad company of lands devoted to public use was begun in 1858, ceased in 1859, and was not begun again until 1868, the continuity of the adverse possession was broken, and the statute of 1865 applies, and destroys any claim the occupant may have by reason of his adverse possession.

6. ———: ———: **Right of Lessee: Condemnation.** A lessee of an adverse claimant can claim no greater right thereto than his landlord, and if his landlord is not entitled to the award of damages as the owner by adverse possession of land devoted to public use, neither is the lessee.

7. **CONDEMNATION: Land Already Devoted to Public Use: Objectors.** Where land has been dedicated to a railroad for depot grounds, it is the owner, and if it does not object to the right of another railroad company to condemn it for a right of way, no one else can.

Appeal from DeKalb Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED AND REMANDED (*with directions*).

*Mosman & Ryan* for appellant; *O. M. Spencer* of counsel.

(1) The court erred in instructing the jury that under the evidence the Hannibal & St. Joseph Railroad Company was not entitled to recover. (2) Baker, Duff, Osborn and Hayward, by making, acknowledging, filing and recording their plats of the town of Osborn in the recorder's office of DeKalb county, dedicated the land in controversy to public use for depot grounds. 5 Am. and Eng. Ency. Law (1 Ed.), 395. (3) That the use of lands by the public for depot grounds and purposes is a public use, there can be no question. Swearingen v. Railroad, 64 Mo. 76; Thompson v. Railroad, 110 Mo. 60; Railroad v. Totman, 149 Mo. 662; State ex rel. v. St. Louis, 145 Mo. 588; Baker v. Railroad, 122 Mo. 400; Daniels v. Railroad, 35 Iowa 129; Railroad v. Suter, 56 Tex. 496; Richey v. Railroad, 55 Kan. 54; Com. v. Church, 30 Kan. 620. (4) There is no question as to the right and power of the Hannibal Company to accept a donation or relinquishment of land for the purpose for which it was created. Its charter gave it power to "purchase, receive, have, hold and enjoy, to them and their successors, lands, tenements and hereditaments,

goods, chattels and all estates real, personal and mixed, of what kind of quality soever.'' Baker v. Railroad, 122 Mo. 406. (5) Baker's intent to dedicate the ground is manifested in the most plain and unmistakable manner by his making, acknowledging and filing the plat. Rutherford v. Taylor, 38 Mo. 315; Price v. Breckenridge, 92 Mo. 378; Price v. Breckenridge, 77 Mo. 447; Lamar v. Clements, 49 Tex. 347. Even if the statute was not complied with in the making and filing of the town plat, still it would be a good dedication at common law. Heitz v. City, 49 Mo. 509; Rose v. City, 49 Mo. 509; Hill v. Sedalia, 64 Mo. App. 498; Perkins v. Fielding, 119 Mo. 160; Kaime v. Harty, 73 Mo. 316. (6) (a) Defendant Baker is estopped from claiming the damages awarded for this land. The evidence shows all the facts hereinbefore stated, respecting his relation to the company, his action in preparing, acknowledging and filing the plat. In addition it shows that he made sales of lots in the townsite by said plat; that he located the depot of the defendant company in 1858 substantially in its present position; that said depot was built under his supervision; that the sidetracks and stockyards were constructed on the tract so reserved for depot grounds; and that the Hannibal Company entered into the possession of the ground so reserved, and has ever since occupied, used, and enjoyed these lands as its depot grounds. This brings the case squarely within the decision of the Supreme Court of the United States, in Morgan v. Railroad, 96 U. S. 716. Railroad v. Suter, 56 Tex. 496; Rutherford v. Taylor, 38 Mo. 315; Campbell v. City, 102 Mo. 340; McGinnis v. St. Louis, 157 Mo. 191. (b) On the facts the Hannibal & St. Joseph Railroad Company contends that said plat, considered simply as a written paper and not as a plat under the statute, was color of title, showing the extent of its possessions. St. Louis v. Gorman, 29 Mo. 593; Crispen v. Hannavan, 50 Mo. 536; Wilson v. Purl, 133 Mo. 367. The making and filing of the plat was certainly equiv-

alent in law to a parol gift. The courts hold "continuous adverse possession under a parol gift for the statutory period will not only constitute a perfect defense as against the donor and those claiming under him, but it will confer title upon the donee." Campbell v. Braden, 96 Pa. St. 388; Moore v. Webb, 2 B. Mon. (Ky.) 282; Oidcalb v. Ludlow, 32 N. J. L. 239; Sumner v. Stevens, 6 Met. (Mass.) 337; Clark v. Gilbert, 39 Conn. 94; Allen v. Mansfield, 108 Mo. 348; Rannells v. Rannells, 52 Mo. 108; Bank v. Fife, 95 Mo. 118. (c) Even if we were to concede that Baker's possession was hostile to his employer and cotenant, and even if we were to concede that it had been brought to the notice of the railway company, still, under the statute he could have no title to the land or claim to the fund. The statutes declare that: "Sec. 7. Nothing contained in any statute of limitations shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this State." Gen. Stat. 1865, chap. 191, p. 746; R. S. 1899, sec. 4270; Railroad v. Totman, 149 Mo. 327; Railroad v. Smith, 170 Mo. 327; Railroad v. French (Tenn.), 43 S. W. 771.

*Brown & Dolman* for respondent.

(1) The proceeding to appropriate land for railroad purposes is a proceeding against the owners. R. S. 1899, sec. 1342, et seq. The railroad company may be its own judge of the state of the title, and condemn the interest of any one it sees fit. The Hannibal & St. Joseph Railroad Company has no standing in this appeal against Baker, its codefendant. (2) The filing of the plat could not constitute a statutory dedication of the "depot ground" to the Hannibal & St. Joseph Railroad Company. The statute in force at the time (2 R. S. 1855, p. 1536) not only negatives the proposition that there can be a dedication under this chapter to a quasi-public corporation, but it places the title, as it should, where

the process of condemnation will not reach it. The defendant railroad company is not seeking the privilege of using this tract of ground for railroad purposes, but is seeking to be compensated in money for the use of it by another for the very purpose to which it is claimed to have been dedicated. (3) The only act by which a dedication is claimed being a statutory plat, the intention must be evidenced by the plat alone, and can not be proved by parol. Watson v. Railroad, 46 Minn. 321; Railroad v. Stephens, 76 Ky. 401; City v. Railroad, 130 Ind. 1. (4) A common-law dedication can only be made to the public. A railroad company can not acquire title by dedication either to depot grounds or right-of-way. Todd v. Railroad, 19 Ohio St. 514; Railroad v. Whitham, 155 Ill. 514; Watson v. Railroad, 46 Minn. 321; Railroad v. Stephens, 76 Ky. 401. (5) If there could be said to have been a dedication in this case to the Hannibal & St. Joseph Railroad Company by name, to the exclusion of all other railroad companies, it was never accepted. The acceptance by one party in such cases is as necessary as a proposition to dedicate. People v. Kellogg, 67 Hun 546; Cambridge v. Cook, 97 Ia. 599; Roseberger v. Miller, 61 Mo. App. 436; Vossen v. Dantel, 116 Mo. 385; Landis v. Hamilton, 77 Mo. 563; Baker v. Vanderberg, 99 Mo. 378. The claim that the construction of the road on the congressional right-of-way constituted an acceptance has no merit. "There may be an acceptance and appropriation in part, and not for the whole."

MARSHALL, J.—This is a proceeding under article 7, chapter 12, Revised Statutes 1899, to condemn, for railroad purposes, a certain parcel of land lying in the town of Osborn, in DeKalb county, and bounded on the north by Baker street, on the south by the one-hundred-foot right-of-way of the Hannibal and St. Joseph Railroad, on the east by Clinton street, and on the west by Hunt street. The property has a front of three hun-

dred and twenty-five feet on the south line of Baker street and substantially the same frontage on the north line of said railroad right-of-way, a front of sixty-two feet on the east line of Hunt street, and a front of about eighty-three feet on west line of Clinton street.

The plaintiff is a railroad corporation, duly organized under the laws of this State. The Hannibal & St. Joseph Railroad Company is a railroad corporation organized under special acts of the General Assembly of this State, approved January 27, 1837, and February 16, 1847. The defendant Baker is a civil engineer, and in 1858 had charge of the western division of the Hannibal & St. Joseph railroad. At that time John Duff and William Osborn were members of the firm of Duff & Co., who were the contractors for the construction of the Hannibal & St. Joseph railroad. J. T. K. Hayward was the land agent of said railroad. Baker, Duff, Osborn and Hayward were authorized by the railroad to select townsites and station grounds along the line of railroad. By an act of Congress the railroad had been granted a right-of-way one hundred feet wide running nearly east and west through the southeast quarter of section 15, and the southwest quarter of section 14 of township 57, range 31, in DeKalb county. By an act of Congress approved June 10, 1852, the Government donated to the railroad, to aid in its construction, every alternate section of land, designated by even numbers, for six sections on each side of the railroad, and under this grant the railroad acquired section 14 of township 57, range 31, in DeKalb county, and section 22 of township 57, range 31, in Clinton county. Charles Birch became the patentee, after the railroad right-of-way had been donated, of the southeast quarter of section 15 aforesaid, and some time prior to 1858 he conveyed the same to the defendant Baker. It appears, however, that Duff & Co. had furnished one-half of the money to buy said quarter section from Birch, so by deed, dated October 6, 1857, Baker conveyed a half interest in said quarter section

to John Duff.   Thereafter Duff conveyed the same to John L. Lathrop in trust for John M. Forbes, John Duff and John W. Brooks, or the survivor of them, by deed dated September 14, 1859.    Thereafter, Brooks and Duff having died, Forbes, by virtue of the power conferred upon him by the deed, appointed J. Henry Brooks and Nathaniel H. Stone as their successors in said trust estate, and they three, on April 16, 1895, gave a power of attorney to H. B. Scott to sell the land, and on April 18, 1898, said attorney in fact conveyed the same to the Hannibal & St. Joseph Railroad Company. Thus the Hannibal & St. Joseph Railroad acquired title to an undivided one-half interest in the southwest quarter of said section 15.

'To revert now to 1858.   In June and July, 1858, Henry Baker and John Duff owned each an undivided one-half of the southeast quarter of section 15.   William Osborn owned the northwest quarter of section 23, and the Hannibal & St. Joseph Railroad Company owned the southwest quarter of section 14 and the northeast quarter of section 22, all in township 57, range 31, and lying as aforesaid partly in DeKalb and partly in Clinton counties.

Baker, Duff, Osborn and Hayward being authorized to select townsites and depot grounds along the line of the railroad as aforesaid, determined to lay out the town of Osborn, which would be located partly in each of said quarter section of sections 15, 14, 23 and 22 aforesaid. They accordingly laid out the town by making, executing and recording a plat thereof, showing the blocks, lots, streets, and the ground reserved for other public purposes.   On that plat there appeared a parallelogram seven hundred and fifty feet long by about two hundred and sixty-five feet wide, lying between Baker street on the north and Platte street on the south, Carpenter street on the east and Hunt street on the west, with Clinton street running north and south through the center thereof, and the Hannibal & St. Joseph Railroad Com-

STATE OF MISSOURI, } ss.
County of DeKalb

I, H. W. Saunders, Recorder of deeds in and for said county, hereby certify that the above is a true copy of that part of the plat of the original town of Osborn, DeKalb county, Mo., lying south of the south line of Georgie street and north of the north line of Ross street and east of Park street; as the same appears of record in my office in the book of plats on page 4.

Witness my hand and official seal. Done at office in Maysville, this 21st day of October, 1901.

H. W. SAUNDERS, Recorder of Deeds.

P 3189½—Vol. 188 Mo. Sup:

pany's right-of-way running substantially through the center thereof from east to west. This parallelogram was marked on the plat of the town of Osborn, "Reserved for Depot Grounds." A plat of that portion of the town is here reproduced on the opposite page.

The part so reserved for depot grounds lies in equal portions in the southeast quarter of section 15, owned by Baker and Duff, and in the southwest quarter of section 14, owned by the railroad, and is therefore wholly within the part of the town of Osborn that lies in DeKalb county. The depot of the railroad was built on its right-of-way within said parallelogram and the portion thereof which lies in section 14 was used as a stockyard. The portion of the parallelogram, so marked on the plat, "Reserved for depot grounds," that lies north of the railroad right-of-way, south of Baker street, and between Clinton street and Hunt street, in said southeast quarter of section 15, and which is the property sought to be condemned in this action, has been indicated on said plat by red lines written by this court on the plat. A portion thereof, to-wit, fifty feet by seventy feet, at the southwest corner of Clinton and Baker streets is claimed by the defendant Morse as lessee of defendant Baker.

The petition alleges that Baker and the Hannibal & St. Joseph Railroad Company, each own an undivided one-half of said property. Baker and said Hannibal & St. Joseph Company, each claim to own the whole of it. The commissioners assessed the value of the property at six hundred dollars, but reported that they could not ascertain who was the owner of it between the conflicting claims of Baker and the railroad. The railroad filed a motion expressing satisfaction with the amount of damage assessed and asking that the same be ordered paid to it, claiming to be the sole owner of the land. Baker filed exceptions to the report of the commissioners, claiming to be the sole owner of the land, that the damages were inadequate, and setting up other grounds.

Morse, the lessee of Baker, also filed exceptions. The court overruled the motion of the railroad, and sustained the exceptions of Baker and Morse, and upon their demand, ordered a jury trial. At that time Baker claimed title solely by limitation. Morse claimed as lessee under Baker. The Hannibal & St. Joseph Railroad Company claimed title by virtue of the dedication in the plat of the town and as grantee of Duff's undivided one-half interest.

The evidence adduced showed that in 1857 or 1858, Baker erected an office building, an outbuilding and dug a well on the premises; that in 1858 he moved a log stable from Grindstone onto the premises; that from 1858 to 1868 Baker was not in Osborn, and did not have possession of the land, and did nothing with it. During the war he was in the army. In 1868 he returned to Osborn, and took possession of the land and used part of it for a lumberyard, and leased the east end of it to one Austin for a lumberyard. When he returned in 1868 he found a large iron wheel on the ground which had been placed there by the railroad company. In 1870 Baker rented the land to Daniels and he put up a cold storage plant on it. In 1873 Baker leased the west end of it to Harvey for the erection of corncribs and a grainhouse on it. In 1874 or 1875 he leased a portion of it, fifty by seventy feet, at the southwest corner of Clinton and Baker streets to the defendant Morse, and he put up a store on it and occupied it for two terms of ten years each.

From about 1870 or 1871, the defendant Baker and the railroad officials have had many negotiations and controversies about the land. The railroad leased a portion of it to one Hitt, in 1871 or 1872. In 1874, when Morse began to build, the railroad officials notified him not to do so, and threatened to enjoin him, and thereupon some correspondence between Baker and the general manager of the railroad ensued, each claiming to own the land.

The portion of the parallelogram marked on the plat, "Reserved for Depot Grounds," that lies in the southwest quarter of section 14, has always been used by the railroad for stockyards, and the railroad claims that it has always been in possession of the portion in controversy (except such as was covered by the buildings on it) and was using it in connection with and as an appurtenance to its depot which was located immediately south of it on its hundred-foot right-of-way.

The trial court instructed the jury that the Hannibal & St. Joseph Railroad Company was not entitled to the land or the proceeds of the condemnation thereof, and further instructed the jury that if they believed from the evidence that "Baker, by himself or his tenants, had the actual, continuous and exclusive possession of the land in controversy for a period of ten consecutive years, before the eleventh day of April, 1898; and that such possession was always open and notorious under claim of ownership, then the jury will find that the defendant Baker, owned the entire interest in the land sought to be condemned," etc. The jury found in favor of the defendant Baker and assessed his damages at the sum of $750, and assessed the damages of Morse, the lessee under Baker, at $550. After proper steps the Hannibal & St. Joseph Railroad Company appealed. The defendant, Baker, claims title solely by limitation. The defendant, Hannibal & St. Joseph Railroad Company, claims title by virtue of the dedication by the plat aforesaid, and also claims title to an undivided half of the fee by purchase from Duff. The trial court tried the case on the theory that, notwithstanding the railroad had the paper title, the defendant Baker had acquired title by limitation, and that ten years' adverse possession immediately prior to the institution of this suit was sufficient to create title by limitation.

## I.

The execution and recording of the plat of the town of Osborn in 1858, was a dedication of the parallelogram thereon marked, "Reserved for Depot Grounds," to the Hannibal & St. Joseph Railroad Company for railroad purposes. The use of the land for depot grounds is an appropriation of the land to a public use, within the meaning of the Constitution and the statute. [Sec. 14, art. 12, Const.; sec. 4270, R. S. 1899; Railroad v. Railroad, 108 Mo. 298; Thompson v. Railroad, 110 Mo. l. c. 160; Railroad v. Totman, 149 Mo. 657; Railroad v. Smith, 170 Mo. 327; Railroad v. Mining Company, 161 Mo. l. c. 309.]

The designation of the parallelogram on the plat of the town as "Reserved for Depot Grounds" constituted a dedication of the property to that public use, and was expressly authorized by section 8 of chapter 158, Revised Statutes 1855. [Rutherford v. Taylor, 38 Mo. 315; Price v. Breckenridge, 92 Mo. 378; s. c., 77 Mo. 447; Hannibal v. Draper, 36 Mo. 332; Reid v. Board of Education, 73 Mo. 295; Heitz v. St. Louis, 110 Mo. 618.] And the sale of lots by reference to such a plat constitutes it a good dedication, even if there had been an incomplete dedication by plat. [Buschman v. St. Louis, 121 Mo. 523; Field v. Mark, 125 Mo. l. c. 515; Brown v. Carthage, 128 Mo.l.c.17; Meiners v.St.Louis, 130 Mo. l. c. 284; Milling Co. v. Riley, 133 Mo. l. c. 584; Downend v. Kansas City, 156 Mo. 68; Railroad v. Gordon, 157 Mo. 81; Longworth v. Sedevic, 165 Mo. 221.]

There is no doubt as to the right of a railroad to accept such a dedication. The act creating it gave it the right so to do, and the law gives it such a right because it is for a public use. [Railroad v. Railroad, 108 Mo. 298; Railroad v. Mining Co., 161 Mo. l. c. 309.]

The railroad therefore acquired a good title to the land in controversy for railroad purposes by the filing of the plat of the town. In addition to this the railroad

has title to an undivided one-half of the fee by reason of the grant from Duff by mesne conveyances to the railroad.

## II.

The only remaining question is whether the defendant Baker has acquired title to the premises by limitation.

·  Baker entered upon the land in 1857 and during that year and the year 1858, he made improvements on the land and claimed to own it.  But from 1858 to 1868 he was not on the land, did not have possession of it, made no visible claim to it, but on the contrary when he returned to Osborn in 1868 he found the railroad using it.  Since 1868 he has had possession and claimed it adversely to the railroad, and there has been a continual controversy between him and the railroad as to the ownership of it.  The railroad claims that the land has been appropriated to a public use since its dedication, and that since 1866 there could be no title acquired to it by Baker under the statute (G. S. 1865, sec. 7, ch. 191; R. S. 1899, sec. 4270) which takes land appropriated to any public use out of the operation of the statute of limitations.  The trial court held that the land was not appropriated to a public use, and, therefore, the defendant, Baker, could acquire title by ten years' adverse possession.  In so holding the trial court was in error.  The land is appropriated to a public use.  And, inasmuch as Baker's possession was interrupted from 1858 to 1868, and he can only show a continuous possession since 1868, the statute of 1865 applies and his possession can not ripen into title by limitation, no matter how long it has continued since 1868.

The only difference between this case and the case of Railroad v. Smith, 170 Mo. 327, is that here the dedication was by plat, while there the dedication was by deed, which is not a difference in law.  In both cases the railroad claimed by a dedication of the defendant, and

in both cases the defendant claimed by limitation. What was said in that case as to the defendant's claim to title by limitation applies equally to this case and disposes of this case. It was there said (1. c. 332):

"The only remaining question is, whether the defendant Daniel Smith has acquired title to the property by limitation.

"There is no question that the defendant by himself and those claiming under him have had the actual possession of the property for a time sufficiently long to confer title by limitation if such a title can be acquired as to this property against the railroad company. The property is a part of a strip of land running through the town of Gower, marked on the plat of the town as 'Railroad Right-of-Way'—'Railroad Stockyards and Grounds.' It lies adjacent to the 'Railroad Right-of-Way,' and is as much a necessary and proper appurtenant to the operation of a railroad as the depot grounds are, for it is the depot for the loading and unloading of stock. It therefore falls within the rule laid down in Railroad v. Railroad, 108 Mo. 298.

"The case is almost identical with the essential facts involved in Railroad v. Totman, 149 Mo. 657, and the principles of law so clearly and forcibly stated by VALLIANT, J., speaking for this court in that case, apply with full force to this case. It was held in that case that while the statute of limitations applied to a railroad company generally, it did not apply to property owned by a railroad company and devoted to use as a right-of-way, depot or station grounds, for such property so devoted, was appropriated to a public use within the meaning of section 6772, Revised Statutes 1889 (sec. 4270, R. S. 1899), and was therefore exempted from the operation of the statute of limitations by virtue of that section of the statutes.

"The research of counsel for appellant developed the fact that the conclusion so reached by this court in that case is in perfect consonance with similar cases in

other jurisdictions. [Slocumb v. Railroad, 57 Iowa 675; Railroad v. French, 43 S. W. 771; Railroad v. Telford's Exrs., 14 S. W. 776; Fox v. Hart, 11 Ohio 414.]

"The fact is emphasized in these cases, that the railroad is not cut off from its right to claim that such land is appropriated to a public use, because it had not previous to the controversy actually used it for a right-of-way, depot grounds, etc., for it was pointed out that if the land was within the designation the company was not obliged to actually occupy it until it became necessary or desirable for it to do so, and that anyone who enters upon land so owned by a railroad company, and erects improvements thereon, does so at his peril, and is affected with notice of the rights of the railroad to such land, and that no possession can be adverse to the railroad or be made the basis of a title by limitation as against the railroad, no matter how long that possession may continue. These are the logical and necessary sequences flowing from the Constitution of this State in reference to property so held by railroads for such uses, as was pointed out by this court in Thompson v. Railroad, 110 Mo. l. c. 160.

"It follows that the defendant has no title whatever to the land in controversy, but that the plaintiff has a good and sufficient title thereto and is entitled to the possession thereof."

It follows that Baker has no title to the land and no right to the proceeds of the condemnation thereof, and as Morse is a lessee under Baker, he has no right to any part of such proceeds. The Hannibal & St. Joseph Railroad Company is entitled to the damages arising from the condemnation of the land by the plaintiff, and as that company does not question the power of the plaintiff company to condemn the land as against it, and as no one else can question that right, the judgment of the circuit court is reversed, and the cause remanded to that court with directions to that court to set aside the verdict of the jury, and also its action in sustaining the

exceptions of Baker and Morse to the award of the com-
missioners, and to sustain the motion of the Hannibal
& St. Joseph Railroad Company for the payment to it
of the damages assessed by the commissioners.

All concur.