## SUMMERS v. ATCHISON, T. & S. F. RY. CO.

(District Court, E. D. Missouri, N. D. October 1, 1924.)

### No. 205.

**1. Railroads ⬤➡62—Railroad's use of property for collecting and holding of water supply "public use."**

Railroad's use of property for collecting and holding water supply is "public use" within Missouri doctrine that railroads are public highways whose lands are devoted to public use, recognized in Rev. St. Mo. 1919, §§ 9870, 9877.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Use (In Eminent Domain).]

**2. Abandonment ⬤➡3—Intent and relinquishment of possession essential to abandonment.**

To constitute abandonment, there must be intent to relinquish without intent to repossess, followed by actual relinquishment to the extent that the property is left free to be appropriated by others.

**3. Railroads ⬤➡82(2)—Evidence held insufficient to establish railroad's abandonment of land.**

Evidence *held* insufficient to establish abandonment by railroad of land acquired for purpose of collecting and holding water supply.

**4. Abandonment ⬤➡4—Nonuser does not constitute abandonment.**

Mere nonuser does not constitute abandonment.

**5. Limitation of actions ⬤➡3(2)—Statute exempting certain lands from purview of statute of limitations held not impliedly repealed by subsequent statute.**

Rev. St. Mo. 1919, § 1314, enacted in 1866, declaring lands devoted to charitable or public uses not within statute of limitations, *held* not impliedly repealed by 30-year statute of limitations, section 1311, subsequently enacted.

**6. Statutes ⬤➡159—Statute to supplant earlier one must be clearly repugnant and susceptible of no other construction.**

For statute to supplant a previous one, it must be clearly repugnant; such legislative intent being not assumed if any other construction can be given the later act.

**7. Statutes ⬤➡158—Not deemed repealed by implication if consistently avoidable.**

Statute will not be adjudged repealed by implication if it can be consistently avoided.

**8. Courts ⬤➡366(1)—Federal courts follow state courts' decisions affecting repeal of state statutes.**

Where state courts have treated statute as continuing in effect, federal court must decline to hold it repealed by implication by statute enacted prior to such state decisions.

In Equity. Suit by William J. Summers against the Atchison, Topeka & Santa Fé Railway Company. Judgment for defendant, and temporary restraining order vacated and set aside.

Shelton & Shelton, of Macon, Mo., for plaintiff.

George J. Mersereau, of Kansas City, Mo., and Mahan, Mahan & Fuller, of Hannibal, Mo., for defendant.

DAVIS, District Judge. This is an action in two counts; the first to quiet title, and the second to enjoin the defendant from interfering with plaintiff's alleged title by adverse possession. The suit was originally brought in the circuit court at Macon county, Mo., where a temporary restraining order was issued. In due course, the cause was removed to the District Court of the United States for the Northern Division of the Eastern District of Missouri. The action involves the title to 4.91 acres of land located in Macon county, Mo. The title of this land passed out of the federal government in 1855 and came down by a regular chain of title to George W. Baity, in 1881, and remained in said Baity until 1887, when, by deed duly recorded, he and his wife conveyed this tract of land to the predecessor in title of the present defendant. Subsequent to this conveyance the widow of said Baity and their children in 1904, by deed duly recorded, conveyed a larger tract of land including the 4.91 acres to Thomas C. Yarde. Through the said Yarde, and other mesne conveyancor, the property acquired has come down to the plaintiff in this case. But in all of the several conveyances, it has been included as a part of a larger tract of real estate. There were no buildings or fences on the tract of ground in controversy. The owners of the adjacent property used the land with which we are here concerned. They pastured it; at times cultivated it. According to plaintiff's testimony, he and his predecessors in title have paid the taxes on this land since 1887, the time of the original conveyance to the railroad company. No tax receipts were produced at the trial; plaintiff's counsel stated that they had been lost. There was no conflict in the evidence at the hearing of the fact that plaintiff had paid the taxes, but counsel for the defendant does raise some question as to who paid the taxes in his brief. In 1922, the defendant erected a fence along the north line of the strip of ground, whereupon the plaintiff removed the fence and instituted this suit.

There seems to be two questions that must be answered in order to decide this case: First, was the land in question devoted to a public use; and, second, does the statute of limitations confirm plaintiff's title?

I. Railroads are recognized in the Constitution of Missouri as being public highways, and individuals, without distinction, are entitled to avail themselves of their facilities both as carriers of passengers and of freight. The statutes of Missouri grant to such corporations the right to condemn real estate not only for right of ways and depots, but for all other necessary purposes incident to the maintenance and operation of the road. This is the recognition of their public character.

Section 9870, R. S. Mo. 1919, provides:

"Any railroad company in this state shall have the right to take and hold all necessary ground for right of way for the extensions and branch railroads authorized to be constructed as aforesaid and for depots and side tracks and other necessary purposes, and if the title thereof cannot be secured by agreement with the owners thereof, or if from any other cause the title cannot be secured, such company may proceed to condemn the same in the same manner and with the same effect as is now provided by law for the condemnation of other lands."

Section 9877, R. S. Mo. 1919, provides, among other things:

"Any company shall have power, by themselves or agents, to enter and take from any land in the neighborhood of the line of their railroad, earth, gravel, stone, wood, water, or other material necessary for the construction and operation of said road, and also for the purpose of depositing thereon earth, stone, gravel, etc., and for the purpose of procuring water for their uses; may lay pipes, erect pumps, dams and reservoirs, and maintain and keep the same in repair, paying, if the owner of said lands and the said company can agree, the damages they shall do to said land or its appurtenances. * * *"

The exact question to be answered here does not seem to have been decided in the courts of Missouri, but there are cases which throw light on the subject. In Hannibal & St. Joseph Railroad Co. v. Totman, 149 Mo. 657, 51 S. W. 412, it was held that "a strip of land in the town of Cameron, acquired by the railroad for its right of way, depot and station grounds, was property devoted to a public use." In St. Joseph, St. Louis & Santa Fé Railway Co. v. Smith, 170 Mo.

327, 70 S. W. 700, it is stated that "real estate held for railroad stockyards and grounds lying adjacent to the right of way, is a necessary and proper appurtenance to the operation of the railroad, and is, therefore, devoted to a public use." In Omaha & St. Louis Railway Co. v. Wabash Railway Co., 108 Mo. 298, 18 S. W. 1101, it was decided that "a hotel which was purchased and run by the railroad company for an eating house to accommodate the employees of the company and passengers and others, was an incident to the operation of the road." In Railroad v. Baker, 183 Mo. 312, 82 S. W. 85, it was decided that "a plot of ground in the town of Osburn, which was designated on the plat as 'reserved for depot grounds,' was likewise a dedication to public use."

[1] In the light of what is said in these cases, there does not seem to be any doubt but that the acquiring by a railroad of property for the purpose of collecting and holding water thereon to supply its engines is likewise putting the property to public use. It is necessary and indispensable for the railroad to provide such facilities. Without them, the operation of the road would be impossible, and therefore we have no hesitancy in saying that the doctrine of the above cases is applicable to the situation that exists in this case.

[2] But the plaintiff asserts that whatever may have been the original idea and purpose in buying the land, that the facts and circumstances in evidence show that there has been an abandonment of the primary purpose of the defendant and of the land. In order to constitute an abandonment there must be an intention to abandon it; that is, an intention to relinquish the possession of the property, without an intention to again repossess it; such intention must be followed by an actual relinquishment of possession, so that, and to the extent that the property abandoned is left free and open to be appropriated by the next comer. Hatton v. Railroad, 253 Mo. 660, 162 S. W. 227; Scarritt v. Railroad, 148 Mo. 676, 50 S. W. 905; Roanoke Investment Co. v. Railroad, 108 Mo. 50, 17 S. W. 1000; Hickman v. Link, 116 Mo. loc. cit. 127, 22 S. W. 472.

[3, 4] The evidence in this case does not reveal such a situation as is necessary to constitute an abandonment. It is true that all of the land owned by the defendant at the place in question was not covered by its pond. The particular tract involved herein was adjacent to its right of way at one point and was near the edge of its lake. Some of the plaintiff's witnesses state that at certain seasons a portion of the tract in controversy was covered by the pond. In the spring of the year, and after heavy rains, they stated that the water would extend out over the lower part of this land. The testimony of the defendant was of like import. And it was further to the effect that in carrying out the plan of the defendant with reference to a water supply at that point, that it was necessary to raise the dam of the pond on the east side of the track to such an extent that the water would stand on the four-acre tract west of the railroad tracks. Instead of the evidence showing that the defendant had abandoned its purpose to use this land for the purpose of collecting water for its trains, it displays an intention to extend its facilities and make available the land for that purpose. The mere fact that all of the land has not been covered by water does not mean that it is not being devoted to the purpose for which it was acquired. The defendant, like other concerns, is compelled to look to the future and make its plans in advance—to maintain its facilities in such a condition that they can be altered to meet the requirements of the future. This appears to be what the defendant has done, and the court is not able to find that it has abandoned this property, for mere nonuser, according to all the cases, does not constitute an abandonment.

II. So, that the serious question in this case becomes whether or not the defendant's title had been lost by reason of the adverse possession of the plaintiff. The plaintiff relies upon what we speak of as the 30-year statute of limitations, which is section 1311, R. S. Mo. 1919, which reads as follows:

"Limitation in Case of Certain Titles.— Whenever any real estate, the equitable title to which shall have emanated from the government more than ten years, shall thereafter, on any date, be in the lawful possession of any person, and which shall or might be claimed by another, and which shall not at such date have been in possession of the said person claiming or who might claim the same, or of any one under whom he claims or might claim, for thirty consecutive years, and on which neither the said person claiming or who might claim the same nor those under whom he claims or might claim has paid any taxes for all that period of time, the said person claiming or who might claim such real estate shall, within one year from said date, bring

his action to recover the same, and in default thereof he shall be forever barred, and his right and title shall, ipso facto, vest in such possessor: Provided, however, that in all cases such action may be brought at any time within one year from the date at which this section takes effect and goes into force."

This statute was enacted in 1874.

Another section of the statute of limitations, section 1314, is to this effect:

"Nothing contained in any statute of limitations shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this state."

[5] Section 1314 became a part of our law in 1866, and is therefore prior in time to section 1311. If the situation we have here is to be governed entirely by section 1311, and if plaintiff's view of the evidence be accepted, then the plaintiff ought to prevail. On the other hand, if this section is to be read along with section 1314, then the result will be different. Plaintiff contends that even though the property in question was acquired for a public use, that section 1311 having been enacted subsequent to section 1314, must necessarily modify, pro tanto, the provision of section 1314. That is, that the Legislature by the enactment of the subsequent statute by implication amended the previous one. This point has not been discussed in any case in Missouri. Section 1314 has been on our statute books for more than 50 years, and there are numerous cases construing that section to be found in the reports, and so far as we know, it never has been contended that this section has been, even in part, repealed by the subsequent enactment. The general policy of the law respecting the application of the statute of limitations to property devoted to any public use has been universally recognized in Missouri since the enactment of section 1314.

[6] It is settled law in this state that while repugnant statutes must necessarily supplant previous ones, they must be clearly repugnant, for unless the legislative intent is expressed in terms, it will not be assumed, if any other construction can be given to the subsequent act. State v. Draper, 47 Mo. 29.

[7] It is a fair presumption that, if the Legislature intends to repeal a statute, it will do so in express terms, or by use of words which are equivalent to an express repeal; and the court will not, if it can be consistently avoided, adjudge that a statute is repealed by implication. State v.

County Court, 41 Mo. 453; Gasconade County v. Gordon, 241 Mo. 569, 145 S. W. 1160; State ex rel. v. Clark, 275 Mo. loc. cit. 102, 204 S. W. 1090; Wrightsman v. Gideon, 296 Mo. 214, 247 S. W. 135.

The same reasons that dictate that property devoted to public or charitable use be exempt from the application of the ten-year statute of limitations would seem to apply with equal force to the thirty-year statute. The Legislature has not expressly made any distinction. The two statutes have passed unchanged through many revisions. That the courts of Missouri have all these years recognized and acted upon the assumption that real estate devoted to public, pious, and similar uses was exempt from the application of the 30-year statute, the same as other enactments of like kind, will readily be seen by an examination of the following cases: Otterville v. Bente, 240 Mo. 291, 144 S. W. 822; Bush v. Stumpe (Mo. Sup.) 222 S. W. 1009; Dudley v. Clark, 255 Mo. 570, 164 S. W. 608.

[8] This court must, therefore, decline to say that the subsequent statute has by implication repealed in any degree the former enactment.

It follows that the finding and the judgment of the court is for the defendant on the first count of the plaintiff's petition, and the finding and the judgment of the court is for the defendant on the second count of plaintiff's petition, and the restraining order issued herein by the circuit court of Macon county, Mo., is hereby vacated and set aside.