PRICE v. THE INHABITANTS OF THE TOWN OF BRECKENRIDGE,
*Appellant.*

1. **Dedication to Public Use.** Land marked "Public Square" on a plat duly executed and acknowledged by the proprietor, is thereby dedicated to public use.

2. ———. The facts in this case, *Held,* sufficient to justify a finding that a dedication had been made to public use.

3. ———: ADVERSE POSSESSION. In the absence of a dedication, possession and user of land by the public under claim of right for a period short of the statutory period of limitation, will not vest title in the public.

4. **Ejectment.** It is manifest error to give judgment for the plaintiff for the whole of the premises in controversy, when his own evidence shows that a part of the title is vested in others.

*Appeal from Caldwell Circuit Court.*—HON. E. J. BROADDUS,. Judge.

REVERSED.

*Crosby Johnson* for appellant.

*O. J. Chapman* for respondents.

HENRY, J.—This is an action of ejectment to recover possession of block No. 15 in the town of Breckenridge. The answer is a general denial, and a special plea of the statute of limitation, and also that the former owners of the town site dedicated the block in question as a public square, by so marking it on the plat filed, and further, that said original proprietors, while yet owners, represented that they had dedicated it for that purpose, and thereby induced others to purchase lots fronting thereon at higher prices than would otherwise have been paid for them. The reply was a general denial, and on a trial of the cause plaintiffs had judgment, from which this appeal is prosecuted.

Plaintiffs' evidence tended to prove that the land embraced in the town site was patented to Henry Gist, who conveyed it to plaintiff Price, as trustee and manager of the town company, consisting of Gist, Wadlow, Terrill and Price; that by conveyances from Wadlow and the heirs of Gist and Terrill, except two minors, plaintiff acquired the title to all of the land, except the interests of said minor heirs of Terrill.

It was admitted that the original plat of said town

was burned with the court-house in 1860, and that there was no certified copy in existence.

Price testified that he never dedicated his interest in the block; that in posters advertising public sale of lots in October, 1856, and July, 1857, it was stated that ground had been reserved for public use in case a new county should be formed with Breckenridge as a county seat, and, except in that manner, no dedication was ever made; that on the plat it was simply marked 15, but the people were in the habit of calling it "the public square." One of the posters accompanying his deposition contained clauses to the following effect: "Ample grounds have been reserved for public purposes," and in one, "Ample grounds have been reserved for county buildings, in case Breckenridge becomes a county seat."

Dr. Bottom testified that his father bought a large number of lots at one of the public sales made by the town company, and that witness moved to Breckenridge soon after as agent of the property, and in 1862 asked Price for a plat of the town, and that he handed him a plat which had the words " public square " written across block 15; that this was in Price's handwriting. He also introduced another plat on brown paper sent to him by Price in 1867, with ".public square " written in Price's handwriting across block 15. That when he went to Breckenridge this block was lying out to commons, and so continued until 1867, when it was fenced and planted in trees by public subscription, and has ever since remained under the control of the town, and that he never heard of any attempt by the original owners or their grantees to exercise any ownership over the block. The town company never included this block in their list of property for assessment for taxes.

Hatfield testified that he was present in 1856 at a public sale of lots by said company, and that the auctioneer publicly announced that block 15 would not be sold, as it was reserved for a public square, and that he bought a lot

29—77

fronting on said block, supposing it would be a public square. Rob't Trosper testified that he was present at the sale, and heard the auctioneer announce that block 15 was for a public square.

A witness for plaintiff, Riol, testified that he was present at said sale, and that the auctioneer did not announce that block 15 was reserved for a public square, but that it would be reserved for public buildings in case the town became a county seat.

The first and second instructions asked by defendant properly declared the law on the facts testified to by Bottom, Hatfield and Trosper, but the court refused one asked to the effect, that if block 15 was marked in the original plats of said town as a public square by the proprietors of said town, or James A. Price, their trustee, then plaintiffs cannot recover. If the plat was acknowledged by Price, as trustee, in pursuance of the conveyance to him by Gist, this instruction should have been given. We infer from the evidence that the tract was conveyed to him before the plat was made, and that he, as vested with the legal title, executed and acknowledged the plat. So far as we can gather the facts from this record, that instruction should have been given.

1. DEDICATION TO PUBLIC USE.

The court also refused the following asked by defendant:

4. If the court finds from the evidence that James A. Price was trustee and manager of the Breckenridge Town Company, and that a plat of said town was filed in the recorder's office of Caldwell county, which was afterward burned and destroyed at the burning of the court-house in 1860; and if the court further finds that the proprietors of said town in 1856 made a public sale of town lots, and that it was announced by the auctioneer, publicly, that block 15 was reserved for a public square; that Wm. R. Hatfield heard said announcement of said auctioneer, and thereafter, at said sale, purchased property fronting on said block; and if the court further finds from the evi-

dence that afterward, in the year 1862, said James A. Price delivered to Mr. Bottom a plat of said town purporting to be a true plat thereof, on which said block 15 was marked as a public square ; that afterward, in 1867, when requested to furnish a plat of said town, he furnished one on which said block was marked as a public square ; and if the court further finds from the evidence that from and after the time of said public sale in 1856, up to the time the same was fenced by a public subscription of said town, said block was permitted to be out as public commons and that during said time neither the said James A. Price, nor the other proprietors of the town, exercised any acts of ownership over the property, and at the time the same was fenced no objection was made by said parties ; then the court may infer from said facts and circumstances that said block had been dedicated to the public use, and the court should find from said conduct and acts of said James A. Price that he is now estopped and debarred from asserting or claiming any title or interest that he may have had therein at said time.

This instruction should also have been given. If the facts stated therein would not authorize a court, or a jury, to find a dedication, both as against the town company and Price, it would be difficult to conceive of a state of facts that would.

Other instructions asked by defendant predicating a right upon the inclosure of the block by a public subscrip-

3. ——: adverse possession. tion in 1868 or 1869, and the use of the same as a public square, claiming it as such, by the inhabitants from either of those dates to the institution of the suit, were properly refused. This suit was commenced in October, 1877, and possession from 1868 to October, 1877, was short of the time which by the statute barred plaintiffs' claim. Nor were those facts alone suffi cient to authorize a jury to find that the block had been dedicated to public use.

There was manifest error in the judgment, by which

plaintiffs recovered the entire block, while their own evi-
4. EJECTMENT. dence showed that two of Terrill's heirs had
an undivided interest in the property, if there had been
no dedication.

There is nothing in the point that the court's atten-
tion was not called to this error. One of the grounds for
a new trial set out in the motion is, that the "judgment is
against the law and the evidence." This was sufficient.

The judgment is reversed and the cause remanded.
All concur.