# CITY OF LADDONIA, Appellant, v. CHEEVER DAY.

### Division One, June 1, 1915.

1. **ADDITION TO CITY: Description of Land: Starting Point.** A description of an addition to a town which begins with the words: "Begin at the quarter section corner on the east side of section 35, township 52, range 7, and run west thirty feet," contains no definite beginning point, and therefore it is impossible to definitely locate the land embraced in the addition from such description.

2. ———: ———: ———: **Cured By Plat.** But when the instrument recites that it is accompanied by a plat and that plat definitely locates an avenue which is the subject of litigation between the city and a private land owner, as well as his land, and that instrument, containing both the imperfect surveyor's description and the plat, is executed, acknowledged and recorded by the dedicator, then by the statute (Sec. 10294, R. S. 1909) the street so laid out in the plat becomes dedicated to public use, and the title thereof vests in the city, whether or not accepted by the city.

3. ———: ———: ———: ———: **Valid Statutory Dedication: Estoppel.** The execution, acknowledgment and recording of a plat of an addition to a town, is a valid statutory dedication of all the streets designated thereon to public use; and thereafter neither the dedicator nor any one claiming under him can change the boundaries of such streets; and the sale of lots by reference to such plat constitutes it a good dedication, even if the dedication by plat were incomplete; and the purchaser of lands from the dedicator or his grantees or heirs, whose deed describes the lands by the lot and block numbers mentioned in the plat, is estopped to assert a hidden or insufficient starting point in the surveyor's description of the addition contained in the dedicatory instrument.

4. ———: **Location: Conflict in Surveyor's Description and Actual Location of Plat.** The rule that where an authentic plat of a city addition is referred to in a deed conveying lots, the particulars of the description in the plat are not conclusive, and if the lines of the original survey can be ascertained they will constitute the true boundaries, although conflicting with the descriptions in the plat, has no application where it is impossible, because of the imperfect surveyor's descriptions in the dedicatory instrument, to apply them with certainty to any

particular tract; and, in such case, where both the city and the defendant claim title to a certain street according to the actual location of the plat, which by its map is definite, their rights will be determined by the map, and not according to the unascertainable original lines of the surveyor's description.

5. ———: ———: ———: **Description By Monuments, Etc.: Plat Alone Should Govern.** The statute (Sec. 10294, R. S. 1909) suspended the old rule as to the binding force of monuments, courses and distances in the descriptions of additions to cities, and declared that a plat, executed and recorded in conformity with its requirements, if covering and indicating the land owned by the dedicator, should be used to ascertain the location of lots and streets of the addition, whether or not it conforms to the lines of the survey, and especially after lots have been sold and improvement of streets have been made in accordance with it.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED AND REMANDED.

*Fry & Rodgers* for appellant.

(1) The plat of Smith's Addition, together with the description of the surveyor and the dedication of streets and alleys, duly acknowledged by J. P. Smith vested in Audrain county the fee simple title to the whole of Western avenue as located on the recorded plat. Sec. 10294, R. S. 1909; Sec. 6573, R. S. 1879; Brown v. City, 128 Mo. 17; Railroad v. Baker, 183 Mo. 322; Buschmann v. City, 121 Mo. 533; Hannibal v. Draper, 15 Mo. 634; Price v. Inhabitants, 77 Mo. 447. (2) The verdict is against the evidence. Western avenue, including that part in controversy, was conveyed by a proper instrument to the county of Audrain for the public. Defendant admits that, but claims the land described in the plat as Western avenue was not conveyed in fact, but other lands were conveyed. In other words, defendant attempts to set aside by oral evidence a solemn conveyance of real estate made in writing. Johnson v. Quarels, 46 Mo. 426; Kennedy v.

Kennedy, 57 Mo. 73; Smith v. Smith, 201 Mo. 547. (3) It was the duty of Joseph P. Smith, as the proprietor of "Smith's Addition," to cause to be made an accurate map or plat thereof particularly setting forth and describing "all streets and alleys and all lots for sale, by numbers and their precise length and width." The law presumes he did his duty. Secs. 6569, 10290, R. S. 1909. (4) The deed from Farres to Bowman and from Bowman to defendant both convey Block Four "according to the recorded plat thereof." The recorded plat showed the lots to be only 114 feet long and the deed to defendant accepts and recognizes the plat and he is bound by it. Bast v. Mason, 165 Mo. App. 727; Jeffords v. Dreisbach, 168 Mo. App. 577; Longworth v. Sedevic, 165 Mo. 229; Lindsay v. Smith, 178 Mo. 189. (5) The testimony was not sufficient to overthrow the recorded plat and written dedication of Western avenue. They constituted a written conveyance of Western avenue to the public and located its east line 556 feet west of west line of Pine street as claimed by defendant. Whitehead v. Atchison, 136 Mo. 485.

*Clarence Barnes, F. R. Jesse* and *E. C. Kennan* for respondent.

WOODSON, J.—This is an action of ejectment brought by the city of Laddonia against the defendant, for the possession of a certain strip of land, alleged to be a part of Western avenue, a public street in Smith's Addition to said city, which will later be more particularly described.

The judgment was for the defendant, and the plaintiff appealed the case to the St. Louis Court of Appeals, and upon motion the case was transferred to this court, because it involved the title to real estate within the meaning of the Constitution.

The following is a copy of description of said Smith's Addition, formal parts omitted:

> Description of Joseph P. Smith's Addition to Laddonia, Missouri.
>
> Begin at the quarter section corner on the east side of section thirty-five, township fifty-two, range seven, and run west thirty feet. Run thence south parallel to the section line one hundred and five feet for a point of beginning, thence south 88° 20′ west 556 feet to the northwest corner of Block 3; thence south parallel to the section line 850½ feet to the north line of the C. & A. R. R.; run thence northeasterly as shown in the accompanying plat to the southeast corner of Block Two (2); run thence north 473½ feet to the point of beginning.
>
> The accompanying plat which is a part of this description fully and truly shows the size and location of all lots, blocks, streets and alleys and is a true copy of said Addition as laid off by me Dec. 1st, 1883.
>
> C. D. Rodgers, Surveyor of<br>Audrain County, Missouri.
>
> All the streets and alleys in the foregoing plat of Smith's Addition to Laddonia, I hereby convey to the county of Audrain, State of Missouri, for public use as streets and alleys as long as they shall be so used. But should such streets and alleys cease to be used for such purposes the title and ownership to revert back to me and my heirs.
>
> Witness my hand and seal this 16th day of June, 1884.
>
> J. P. Smith    (Seal)

Properly acknowledged and recorded.

And the following is a copy of the plat filed:

# Exhibit 1

The land in suit is described as follows:

"Begin at a point forty-two feet and four inches west of the northwest corner of Lot Eight, Block Four, of Smith's Addition to the city of Laddonia, in Audrain county, Missouri, and run thence east forty-two feet and four inches to the northwest corner of said Lot Eight, then run south to the southwest corner of Lot Five of said Block Four of said Smith's Addition, then run west forty-one feet and three inches, thence run north to the point of beginning."

It is practically conceded that one J. P. Smith owned the land in controversy, together with other adjoining lands, and that on the 16th day of June, 1884, he laid out and platted Smith's Addition to the city of Laddonia and dedicated the streets and alleys described therein to the city, one of which, as previously stated, was Western avenue; and the defendant purchased all of Block Four in said addition from Verdia Bowman, as stated in the deed, "according to the recorded plat thereof."

The land in suit lies immediately west of and adjoining defendant's said Block Four, and he claims it as a part of his block, and the city claims it as a part of said Western avenue.

Upon this state of facts this case must be disposed of.

I. I have set forth the description of Smith's Addition to the city of Laddonia, and the plat accompanying it *in haec verba,* as appears from the record filed in this court.

*Addition to Town: Insufficient Description: Dedication of Streets.*

By drawing a plat of section 35, township 52, range 7, of Audrain county, Missouri (which I have here done, viz.:)

S. 35, T. 52, R. 7.

*N*

|  |  |
|---|---|
| N. W. ¼ | N. E. ¼ |
| S. W. ¼ | S. E. ¼ |

*W*                         *E*

*S*

and then attempting to locate the plat of the addition thereon, it will be discovered at a glance that it is an impossibility, for the reason that no definite starting point is given in the description of the addition, nor does the plat accompanying it lend any assistance thereto.

The description is: "Begin at the quarter section corner on the east side of section thirty-five, township fifty-two, range seven," etc.

To what quarter section corner does that language refer, the northeast corner of the northeast quarter, the southeast corner of the same quarter or the southeast corner of the southeast quarter of said section? No one, be he man, surveyor or the judge of a court, can answer that question, because it may refer to any one of the three corners mentioned.

With that omission in the description of the addition we have nothing before us except the plat proper

to indicate the land in controversy; and that plat definitely locates the avenue in question, as well as the property of the defendant's Block Four, and according to that plat, clearly the strip of land in question belongs to the city, for the reason that section 6573, Revised Statutes 1879, now section 10294, Revised Statutes 1909, the statute under which the addition was laid out and platted and the.streets and alleys were dedicated to public use, required all such additions and plats to be laid out and platted, showing the lots, blocks, streets and alleys, etc., and to be acknowledged and recorded as deeds conveying real estate are required to be acknowledged and recorded, and that when such additions are so laid out, platted, acknowledged and recorded the title to the streets and alleys described therein shall by those acts become the property of the city in fee, to be held by it in trust for the public.

This statute has been before this court for consideration so frequently that it would be hard for me to add anything new to the observations of the learned judges who wrote the opinions therein; and for that reason it will suffice to quote briefly from one or two of those cases and cite a few more.

In the case of Brown v. City of Carthage, 128 Mo. 10, l. c. 17, the court used this language:

"We do not think that the reservation, in the plat, of the 'trees and rocks' on the surface of the streets and alleys impairs the force and effect of the plat as an absolute statutory dedication for the purpose contemplated by the statute, and in this State, as in many others, a valid statutory dedication operates to vest the fee and dispenses with the necessity of an acceptance on the part of the public. [G. S. 1865, sec. 8, chap. 44; R. S. 1889, sec. 7313; Elliott on Roads & Streets, 87; Buschmann v. St. Louis, 121 Mo. 523; California v. Howard, 78 Mo. 88; Reid v. Board of Education, 73 Mo. 295.] After such a dedication, neither

the dedicators, nor anyone claiming under them could change the boundaries of the streets and alleys."

And in the case of Railroad v. Baker, 183 Mo. 312, l. c. 322, the court said:

"The execution and recording of the plat of the town of Osborn in 1858, was a dedication of the parallelogram thereon marked, 'Reserved for Depot Grounds,' to the Hannibal & St. Joseph Railroad Company for railroad purposes. The use of the land for depot grounds is an appropriation of the land to a public use, within the meaning of the Constitution and the statute. [Sec. 14, art. 12, Constitution; Sec. 4270, R. S. 1899; Railroad v. Railroad, 108 Mo. 298; Thompson v. Railroad, 110 Mo. l. c. 160; Railroad v. Totman, 149 Mo. 657; Railroad v. Smith, 170 Mo. 327; Railroad v. Mining Company, 161 Mo. l. c. 309.]

"The designation of the parallelogram on the plat of the town as 'Reserved for Depot Grounds' constistituted a dedication of the property to that public use, and was expressly authorized by section 8 of chapter 158, Revised Statutes 1855. [Rutherford v. Taylor, 38 Mo. 315; Price v. Breckenridge, 92 Mo. 378; s. c., 77 Mo. 447; Hannibal v. Draper, 36 Mo. 332; Reid v. Board of Education, 73 Mo. 295; Heitz v. St. Louis, 110 Mo. 618.] And the sale of lots by reference to such a plat constitutes it a good dedication, even if there had been an incomplete dedication by plat. [Buschmann v. St. Louis, 121 Mo. 523; Field v. Mark, 125 Mo. l. c. 515; Brown v. Carthage, 128 Mo. l. c. 17; Meiners v. St. Louis, 130 Mo. l. c. 284; Milling Co. v. Riley, 133 Mo. l. c. 584; Downend v. Kansas City, 156 Mo. 68; Railroad v. Gordon, 157 Mo. 81; Longworth v. Sedevic, 165 Mo. 221.]

"There is no doubt as to the right of a railroad to accept such a dedication. The act creating it gave it the right so to do, and the law gives it such a right because it is for a public use. [Railroad v. Railroad,

108 Mo. 298; Railroad v. Mining Co., 161 Mo. l. c. 309.]''

There are many other cases to the same effect; among them are the following: Naylor v. Harrisonville, 207 Mo. 341; Buschmann v. St. Louis, 121 Mo. 523, l. c. 535; Hannibal v. Draper, 15 Mo. 634; Price v. City of Breckenridge, 77 Mo. 447; Hatton v. St. Louis, by BOND, J., 264 Mo. 634.

Under that statute and the authorities mentioned there can be no doubt in my mind but what the fee to the property in controversy belongs to the plaintiff for the use of the public and it is entitled to a recovery in this case without that right is destroyed by the defense interposed by the defendant.

Moreover, in my opinion, that statute is both wise and just.

This court in effect has held in numerous cases of this character, that to ignore that statute where additions have been made to cities and laid out into lots, blocks, streets and alleys, and especially after the lots had been improved by the owners and the streets used by them in connection therewith would result in great confusion, injustice and irreparable damage both to the city and to the property owners thereof; and for that reason the statute should be given full force and effect.

In the case of Whitehead v. Atchison, 136 Mo. 485, the court not in exact terms, but almost so and in point of fact overruled the case of Whitehead v. Ragan, 106 Mo. 231, the principal case relied upon by counsel for defendants as a defense to this case, and in the discussion of this question on page 495, said:

''To announce and adhere to, as a fixed rule of law, without qualification, the proposition announced in the 106 Mo. when these same litigants were then before the court, 'If the line between lots one and four was located upon the land when surveyed and subdivided, and can now be ascertained and determined,

that line will constitute the true division line between the lots [of the subdivision] though it conflicts with the description given in the plat,' when the lots are sold by their lot number according to the subdivision plat, would be to involve the entire communities of our cities (where in most instances all conveyances of property are made by lot number simply, with a reference to the recorded plats for locating the courses and distances of the boundaries) in confusion and doubt as to the stability and fixedness of their possession and rights.

''With such a rule of construction in force, the lot-owner would be in complete ignorance of his true boundaries—would practically be without line or compass. No amount of investigation or research on his part would necessarily lead to a correct determination of his lot lines. If the courses and distances as indicated on the plat of which his lot is a part, are to be overturned, as in this case is sought by the hidden corners, or what is still worse by the testimony of the surveyor himself twenty odd years after the survey was made, that he established a line at a point thirty or fifty feet from where he certifies on the plat made by himself that it was located, the lot owner can know nothing of his boundaries. Such, as above mentioned, was the character of facts to which resort was made to set aside the lot boundary as indicated on the plat, and they will serve in the extremity of their reach, to emphasize the danger of the rule recognizing the right to permit the possibility of that character of facts as testimony in this kind of a contest.

''Between the purchaser of a lot and one who promulgates a plat describing and defining the lots thereof, the purchaser will not be held at his peril to ascertain whether or not the plat agrees with the original survey of the land subdivided and platted; but he is justified in assuming that the plat is correct, and that the lot or lots purchased by him are of the dimensions, and

bounded by the courses and distances as indicated on the plat, to which, for particulars, his deed must refer, when the lot number alone is given in the deed. Every prompting of fair dealing, as every consideration of equitable estoppel, operates to deny defendant the benefit of the alleged secret, hidden corner stones, to establish the lot line between lots one and four as against the boundary indicated by the courses and distances named in the plat, as well as in the description in the deeds affecting said lots, referring to that instrument for particulars. The judgment of the circuit court will be affirmed.''

This rule is not only founded upon principle and authority but also upon justice and good morals. It is common knowledge independent of the statute before mentioned, that cities, towns and villages are laid out into lots, blocks, streets and alleys, and that public and private improvements are made thereon according to plats showing those facts, and that the citizens of the towns and cities have no authority whatever over the execution and acceptance of such maps and plats.

Those matters rest entirely with the parties who plat the ground and the authorities of the city whose duty it is to see that they conform to the law; and the people of the country have the right to rely upon the presumption that those matters were correctly and properly done, and especially should this be true where, as in this case, the land in controversy belonged to the same person, Mr. Smith, who laid out the addition and sold the lots and blocks according to the streets and alleys.

Both parties acquired their respective interests in this strip of ground, as well as all of their interest they had in the land embraced within said addition, either directly from Mr. Smith or through mesne conveyances from him, and in pursuance to and in conformity to the plat thereof, as expressly stated in their muniments of title, as previously shown.

This alone should and does effectually and permanently estop and debar defendant from claiming any interest whatever in the land in controversy. Of course I refer to an estoppel by deed, and not *in pais*.

This conclusion is supported by all of the authorities previously cited.

II. But independent of the conclusion announced in the previous paragraph of this opinion, it is manifest from the full face of the record that the defendant is not entitled to a judgment in this case according to his own theory of defense, which in his own language is stated as follows:

**City Addition: Conflict in Surveyor's Description and Actual Location of Plat.**

"1. When an authentic plat of a subdivided tract of land is referred to in a deed conveying a subdivision of such tract, the plat becomes a part of the deed, but the particulars of the description in the plat are not conclusive as to the correctness of such description.

"2. Where the line of the original survey can be ascertained and determined it will constitute the true line, although it conflicts with the description in the plat, and where the evidence of the location of the original line is conflicting the question is for the jury."

The position of the defendant, as stated in the first clause just quoted, practically concedes the plaintiff's right to a recovery in this case, unless that right has been overcome by the evidence introduced by him in support of the second clause, which is the real theory of his defense.

This defense must fail for the reason, as shown by the plat and description of Smith's Addition to the city of Laddonia set forth in the first paragraph of this opinion, that the lines of the original survey of the subdivision were not shown, because no starting point of the survey was given, nor does the plat throw any light upon the subject.

That being true, it is a physical impossibility to show the location of the true lines of the survey, even though it should be conceded that the plat, as now fitted to the ground, is not located upon those lines.

From the description given of Smith's Addition, it must be located either in the northeast quarter of said section thirty-five or in the southeast quarter thereof, but which this record does not show; but be that as it may, the record affirmatively shows that both the plaintiff and defendant claim title to the land in controversy according to the actual location of the plat, and there is no competent evidence in this record to show whether that location is upon the true lines of the survey or not; and for that reason the defendant was not entitled to a recovery.

III. But independent of what has heretofore been said, we are of the opinion that in a case like this, where both parties claim under the same plat, neither the law nor good policy permits either of them to dispute the lines of the survey as shown by the plat as actually located upon the land; and especially should this be true where the whole or a large part of the addition has been sold to various persons according to the actual location of the plat upon the land, and where the property and streets have been built upon and improved.

This is the clear ruling of this court in the cases cited, except the case of Whitehead v. Ragan, supra, which, as before stated, has been so modified or overruled in the case of Whitehead v. Atchison, supra, that it is no longer an authority in a case of this character.

The case of McKinney v. Doane, 155 Mo. 287, cited by counsel for defendant, is not in point, for there the monuments were present and well known; but here, none is shown, and none in fact is shown to exist, except by parole evidence, which alone is not sufficient.

[Clark v. McAfee, 227 Mo. 152; Carter v. Spracklin, 246 Mo. 116.]

IV. The question involved in this case is too important and far-reaching, either for good or evil, to rest unsettled, and for one I am now in favor of eliminating from the jurisprudence of this
Old Rule as State forever, all of the evil that still
to Surveys lingers in the law regarding this matter,
Abolished
By Statute. which said section 10294 was evidently designed to eradicate. In the administration of the law the courts have, at times, through inadvertence or oversight, overlooked said statute, and at other times have tried to harmonize it with the old rules of the common law regarding monuments, courses and distance governing the conveyance of rural property, when the two are as irreconcilable as are oil and water or good and evil, as is conclusively shown by the conflict mentioned in the cases before mentioned.

The old rules of courses, distances and monuments when concededly applicable to the conveyance of rural property—after conveyance made and the vendee has been placed in possession of the property by the vendor, and large and lasting improvements have been made and placed thereon—the courts of this and many, if not of all, other states, have not hesitated for one moment to suspend through the application of the doctrine of estoppel, in order to carry out the real intent and purpose of the parties and to mete out equity and justice between them and their privies in contract, blood and estate.

In many such cases that doctrine of estoppel has been applied to the conveyances of farms, to grants of rights of way for railroads, and even to the sale of city property.

Those cases are so numerous and familiar to the bench and bar that it would be a supererrogation of labor and a waste of space to cite them.

The courts in those cases work out through the principles of equity precisely what the Legislature evidently designed to accomplish by the enactment of the statute in question. On in other words, the frequent errors and the many mistakes made by surveyors and property owners in laying out towns and cities and additions thereto, fraught with the hundreds of incidental and irreparable evils thereof, were the causes that gave birth to that statute; and the evident design was that when such a plat had been executed and filed in conformity to the statute *covering the land owned by the party making the addition and dedicating the streets and alleys indicated by the plat filed* therewith, then the streets and alleys indicated by the plat as actually fitted to and laid out on the land, became vested absolutely in the town or city for the use of the public, and that is true whether the plat as actually located upon the ground by the owner, by the sale of lots or otherwise, conforms to the lines of the survey or not, and especially after lots have been sold by him according to the actual location of the plat.

Neither the public, the owners of the streets nor the purchasers of the lots are so much interested in the question as to whether or not the plat conforms to the points of the compass or to the lines of the survey of sections and quarter sections, as they are in the certainty of the location of the lots and blocks and streets and alleys.

Monuments are easily removed or destroyed, and for that reason they frequently disappear; but additions to towns and cities, laid out into lots and blocks and streets and alleys, with buildings erected upon the former and the streets improved which is the very purpose of the addition, are not easily removed or destroyed. In the latter case, if a mistake is made of the true line of the street or of a lot or block, as a rule it only affects the party or parties making it; but in the former, the city and every property owner in the

addition is of necessity· affected thereby; and if that rule and not the statute is observed, each and all of them will be more or less damaged thereby.

Any other construction of the statute would practically nullify and destroy the highly remedial provisions thereof, and in case of a mistake as previously indicated, that entire part of the city, and all of the property owners therein, would be thrown into confusion and uselessly damaged more or less; and in many cases the damages would be irreparable.

We are, therefore, of the opinion that the judgment should be reversed and the cause remanded to the circuit court for a new trial in conformity to the views herein expressed.

All concur; *Blair, J.,* in result.