## WILLIAM LATNEY BARNES et al., Appellants, v. ALONZO C. WHITSON et al.

### Division   Two, December 30, 1920.

1. **CITIES: Additions: Plat: Omitted Lots: Correction.** A petition alleging that a plat of a certain addition was executed, acknowledged, accepted by the city, and filed for record by plaintiffs, the owners of the land; that one block, as shown by said plat, was by mistake laid off into 18 lots having 53 feet frontage, when in fact there were 20 such lots in the block; that another block was by said plat laid off into 14 lots having a frontage of 50 each, when in fact 16 such lots were actually surveyed and staked off; that plaintiffs conducted an auction sale of said addition, including said two blocks, and caused said lots, as shown by said plat, to be conveyed to the respective purchasers, and that the defendants are now the owners; and concluding with a prayer that the court correct said plat so as to make it show 20 lots 53 feet wide in the one block and 16 lots 50 feet wide in the other, does not state a cause of action. The petition shows on its face inexcusable negligence in omitting from the plat the surplus land now claimed by plaintiffs, for which the defendants were in no wise responsible, having no notice of the omission or plaintiffs' present claim before they purchased, and the mistake being unilateral and in no sense mutual.

2. ———: ———: ———: ———: **Rights of Purchaser.** A purchaser of land by the description contained in a recorded plat cannot be divested thereof by the original owner, nor can his rights therein be disturbed, where the land claimed was omitted from the recorded plat, made by the surveyor employed by the owner, and the purchaser relied on the plat for the description and number of his lot, was taken upon the land by the owner and shown the lot he was buying, was placed in possession under a warranty deed and has built houses or made other lasting improvements.

Appeal from Audrain Circuit Court.—*Hon. Ernest S. Gantt*, Judge.

AFFIRMED.

*S. D. Stocks* and *Harry G. Stocks* for appellants.

(1) The defendants were all in court; the court had jurisdiction of the cause and a final judgment was proper as against the defendants. R. S. 1909, sec. 1799; Montz v. Moran, 263 Mo. 261. (2) In a suit in equity, every person having a material legal or beneficial interest in the subject-matter may properly be made party plaintiff or defendant, regardless of whether the interest are joint or several, the object being to settle the whole controversy and have the decree binding on all having an interest therein. Shelton v. Harrison, 182 Mo. App. 404; Cook v. Basom, 164 Mo. 599. (3) Mutual mistake gives a court of equity jurisdiction to ascertain the disputed boundary lines; so it has been held that in case of disputed boundary, if the commissioners have run the line and fixed the corners in making the allotment, such corners and lines must govern, and if there is a mistake by which all the land is not included in the division it can be corrected only by court of equity, not by ejectment. 9 C. J. p. 284; Louisville Ry. Co. v. Mitchell, 7 Ky. 144. (4) The jurisdiction of courts of equity to establish disputed boundaries is effecutated by appointment of a commissioner whose duty it is to go on the lands, to ascertain, fix and mark the true boundary line, and report their action to the court. 9 C. J. p. 268, sec. 289; Guice v. Barr, 130 Ala. 570. (5) The jurisdiction of chancery to fix disputed boundaries, where these have become obscure, has been recognized by the courts. Wilson v. Hart, 98 Mo. 618; 9 C. J. 266, sec. 281. (6) The circuit court took and had jurisdiction of the subject-matter, in chancery, and it will retain the controversy for the purpose of ad-

ministering full, adequate and complete relief and doing entire justice with respect to the subject-matter. 16 Cyc. 106, note 68; Keeton v. Spalding, 13 Mo. 321; Curtis v. Moore, 162 Mo. 442.

*Fry & Fry* for respondents.

(1) There is no equity in plaintiffs' bill. It states that the land was surveyed and platted by their surveyor. If a mistake, it was unilateral, one which equity will not reform. Dougherty v. Dougherty, 204 Mo. 228; Robinson v. Korns, 250 Mo. 663. (2) The plaintiff's petition is multifarious. There is a misjoinder of parties and a misjoinder of claims. Stalcup v. Garner, 26 Mo. 72. (3) Where a party has means of information and opportunity to enlighten himself equity will not grant relief. Plaintiff must be without negligence. Jones v. Bush, 156 Mo. 375; Cannon v. Sanford, 20 Mo. App. 590; Young v. Coleman, 43 Mo. 179. (4) Equity will not relieve mistakes unless the mistake is mutual. Robinson v. Korns, 250 Mo. 663; Spelman v. R. R. Co., 187 Mo. App. 119; Steinberger v. Phoenix Ins Co., 49 Mo. App. 255. (5) The mistake was made by plaintiffs' surveyor who made the recorded plat and was purely unilateral and one which courts of equity do not reform. Dougherty v. Dougherty, 204 Mo. 228; Grand Lodge v. Sater, 44 Mo. App. 445; Robinson v. Korns, 250 Mo. 663. (6) The quantity of land in a description is rejected if inconsistent with the actual area of the premises described. Conveyance by lot number conveys all in the lot. Rutherford v. Tracy, 48 Mo. 385; Campbell v. Johnson, 44 Mo. 247; Walker v. Garner, 258 Mo. 513; Ware v. Johnson, 66 Mo. 668; Wood v. Murphy, 47 Mo. App. 539; Jeffords v. Driesbach, 168 Mo. App. 583. The actual survey controls and not the plat. McKinley v. Doane, 155 Mo. 287. (7) Plaintiffs laches alone should defeat this action. Bobb v. Wolff, 148 Mo. 335; Shelton v. Howell, 232 Mo. 358; Terry v. Groves, 248 Mo. 450.

RAILEY, C.—This is a proceeding in equity, commenced by plaintiffs in the Circuit Court of Audrain County, Missouri, on October 12, 1914, to correct and reform a plat, filed and recorded by them in said county, in laying off and establishing Lakenan & Barnes South Side Addition to the City of Mexico, in the county and State aforesaid, in October, 1904. It appears from the petition, and evidence, that plaintiffs, in October, 1904, were the owners of a certain tract of land adjoining said City of Mexico; that during said year, they laid off, surveyed and platted the above addition, in which certain streets and alleys were dedicated to the public use; that among other things, said addition contained ground laid off in blocks numbered one, two, three, four, five and six respectively; that the corners of Blocks One and Six were correctly surveyed, marked and established by the surveyor platting said lands; that said Block One was divided into eighteen lots upon said plat, having a frontage of 53 feet each, and a depth of 126½ feet each; that nine of said lots, as shown upon said plat, fronted upon Carrico Avenue, and nine on Emmons Avenue (Street); that a 12-foot alley, running east and west, divided said block. It is charged in the petition, but denied in the answer, "that the surveyor in platting said addition by error, oversight and mistake, only indicated on said plat eighteen lots, of the dimensions aforesaid, when in truth and in fact twenty lots should have been indicated in and for said Block One; and that in said Block Six, sixteen lots having a frontage of 50 feet and a depth of 126½ feet each, eight fronting on Emmons Avenue, and eight fronting on the Boulevard, with a twelve-foot alley dividing said block, were actually measured, marked, surveyed and staked off; but that the said surveyor in platting said Block Six, by error, oversight and mistake indicated only fourteen lots of the dimensions aforesaid in said Block Six, when in truth and in fact said Block Six contained sixteen lots of the aforesaid dimensions."

The plat actually acknowledged, filed, accepted by the City of Mexico, and recorded in said county, was introduced in evidence, and a copy of same appears in the abstract.

The evidence shows that the distance measured on a straight line from the northeast corner of Lot 1 in Block 1, on West Street, to the northwest corner of Lot 9 at Singleton Street, is 513 feet. If the surveyor had commenced with Lot 1 of Block 1, and had marked the same on the plat 53 feet in width, and 126½ feet in depth, and had continued with each of the next eight lots west in the same manner, the nine lots would have occupied 477 feet of the 531 feet, and would still have left a lot 54 feet in width and 126½ feet in depth, next to Singleton Street.

The contention of plaintiffs, in regard to the surplus land contained in Blocks One and Six, will more fully appear by reference to "Exhibit A" found in the abstract.

It appears from the record that on or about October 14, 1904, plaintiffs conducted an auction sale of the said addition, including Blocks One and Six therein; that plaintiffs' auctioneers, in making the sales of lots in said Blocks One and Six, drove from lot to lot, and sold the whole number of lots as laid off and platted in each block.

Mr. Adam C. Barnes, one of the plaintiffs herein, testified as follows:

"THE COURT: Q. When you had completed this auction sale you had sold to the people who had been purchasers, as you thought, all the ground your firm owned in both of those blocks? (One and Six) A. Yes, that's right.

"THE COURT: Q. And later on in 1907 or 1908 your attention was called to the fact that there might be some surplus ground there? A. Yes.

"THE COURT: Q. And then an investigation was made and resulted in this litigation? A. Yes, sir."

This suit was commenced on October 12, 1914, against all the defendants who owned lots in said Blocks One and Six, at that time. Some of the defendants became the owners of said lots through purchases made from their predecessors in title. All of those owning said lots, as well as those having deeds of trust thereon, claim through plaintiffs, as the common source of title, under the auction sales and plat aforesaid. The petition does not specifically allege what parts of either Blocks One or Six plaintiffs claim title to, nor does it allege that either of . the defendants is in possession of any of the surplus land in said Block One and Six claimed by plaintiffs. It is undisputed that plaintiffs executed and delivered to the purchasers of lots at said auction sales warranty deeds for the lots purchased by them, and that the lots so purchased were described as shown upon the plat laying off said Addition. It is likewise undisputed that each purchaser aforesaid was put in possession of the lot or lots purchased by him, and that he paid to plaintiffs the purchase price therefor. It is also undisputed that soon after said auction sales some of the purchasers of lots in said Blocks One and Six, built houses on a few of said lots, and made other lasting and valuable improvements thereon. It is not contended that any of the defendants had notice, prior to their purchases, that plaintiffs claimed any surplus land in either Block One or Six, or that they made claim to any part of said blocks.

The surveyor, who made the plat and measurements, in regard to Blocks One and Six, was not produced as a witness, nor does the record show any explanation for the error complained of, as having been made by him.

Several of the defendants answered, setting up their respective titles, with a denial of the allegations in the petition, pleading estoppel by reason of the facts aforesaid, and charging that said petition was multifarious, etc.

One June 5, 1917, the court, after hearing the evidence, found the issues herein in favor of all the defend-

ants and against all of the plaintiffs, dismissed appellants' bill, and entered judgment in behalf of defendants.

Plaintiffs, in due time, filed their motion for a new trial, which was overruled, and the cause duly appealed by them to this court.

The death of plaintiff Adam C. Barnes was formally suggested in this court, and the action was not revived in the name of his heirs and legal representatives. The remaining plaintiffs, on March 16, 1920, entered their appearance in this court.

Such other matters as may be deemed necessary will be considered later.

I. It apears from the petition that the plat, made in October, 1904, was properly executed, acknowledged, accepted by the City of Mexico, and filed for record by plaintiffs in the Recorder's office of said county. It also appears from the petition that Block One, as shown by said plat, was laid off into 18 lots of 53 feets each in frontage, and 126½ feet in depth, numbered from 1 to 18 inclusive; nine of which fronted on Carrico Avenue and the other nine on Emmons Avenue. It further appears from the petition that, on October 14, 1904, plaintiffs conducted an auction sale of said addition, including Blocks One and Six therein; that they "caused said lots to be conveyed by a general warranty deed from plaintiff Wm. Latney Barnes and wife to the respective purchasers, and that by *mesne* conveyances from the said Wm. Latney Barnes and wife as aforesaid, the following defendants became and are the owners of lots as shown on the plat in Block One as follows." Here follows the names of defendants, with the respective lots numbered and owned by them, as stated in the petition and shown on the plat. The petition also sets out the names of those having deeds of trust on certain of said lots. The petition concludes with a prayer, in which the court is requested to correct said plat, so as to make it contain the surplus land claimed by plaintiffs in Blocks One and Six, etc.

In other words, the court, in legal effect, is asked to cancel said plat; to create a new one, having Block One to contain 20 lots of 53 feet each, except two of which would contain 54 feet each of frontage, by 126½ feet in depth, and to have Block Six corrected so as to show 16 lots of 50 feet frontage and a depth of 126½ feet each.

In view of the foregoing, we are of the opinion that a bill in equity to correct said plat cannot be sustained. The petition, therefore, fails to state a good cause of action. [Wilson v. Hart, 98 Mo. 618, and cases cited; Secs. 10290 to 10294, R. S. 1909; City of Laddonia v. Day, 265 Mo. 383, 178 S. W. 741; Jackson v. Miller, 195 S. W. 703; Macon v. Brewster, 273 Mo. l. c. 620, 201 S. W. l. c. 548; Wright v. City of Joplin, 275 Mo. 212, 204 S. W. 910.]

The petition shows on its face that the surveyor employed by plaintiffs was guilty of inexcusable negligence, in overlooking the surplus land now claimed by appellants, when he made the plat in controversy. These defendants were in no way responsible for said omission, nor did they have any notice, before purchasing, of any such claim. It was simply a unilateral mistake of the surveyor, and not a mutual mistake, involving these defendants. The latter bought in the open market, paid full value for their lots, relied on the plat for the numbers and descriptions of their lots, were taken upon the land by plaintiffs, shown the ground they were buying and were placed in possession of same under warranty deeds from plaintiffs. Some of the defendants have built houses and made lasting improvements upon said lots. They have acted in good faith, entered into possession of the lands they actually bought and were guilty of no negligence. It is not the province of a court of equity to reward negligence like that of the surveyor, nor those who have been guilty of laches in failing to assert their rights, by timely action, instead of waiting for years to take action, after the defendants have expended their time and money

in improving the property which they bought in the ordinary course of business, as innocent purchasers. We are, therefore, of the opinion that the trial court reached a correct conclusion in dismissing plaintiffs' bill.

II. We have likewise carefully examined the evidence in this case, and have no hesitation in holding that plaintiffs' claim, under the facts aforesaid, is absolutely devoid of merit. The authorities heretofore cited, in no uncertain language, hold that a purchaser of land, by the description given in the recorded plat, cannot be divested of same by the original owner, nor his rights therein disturbed, under such circumstances as are present in this record.

The judgment below is for the right parties, and is accordingly affirmed. *White* and *Mozley, CC.*, concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.