PERCY L. MILLER and AMEY L. MILLER, Respondents, v. CLAUDE HALLERAN and MAUD HALLERAN, Appellants.*

Kansas City Court of Appeals. February 9, 1925.

1. **APPEAL AND ERROR:** Finding of Trial Court, Supported by Substantial Evidence, Will Not be Disturbed on Appeal. Evidence *held* sufficient to support finding that 4111 Penn Street and "North half of lot 5," described in deed of trust and trustee's deed, are one and the same tract of ground, which finding will not be disturbed on appeal, unless plat conclusively, or as a matter of law, shows that it is not.

2. **UNLAWFUL DETAINER:** Evidence Held to Support Finding That Property Described in Deed of Trust Was Same as That Held and Occupied by Defendants. In an unlawful detainer suit, evidence *held*

to support finding, that property described in deed of trust as north half of lot 5, was same tract of ground occupied by defendants which they refused to give up, though appearing as lot 4 on plat dealing with adjacent lots.

3. EVIDENCE: Survey Properly Excluded Where it Was Not Survey of Property in Question and Surveyor in Making it Did Not Comply with Statute and Did Not Testify. Where survey did not purport to be survey of property in question and was not of itself evidence of its own authenticity, since surveyor in making it did not comply with provisions of section 1272, Revised Statutes 1919, and was not produced and did not testify, court properly excluded the same.

4. ESTOPPEL: Defendants Estopped from Claiming That Property Occupied by Them Was Not Same as That Described in Deed of Trust. In an unlawful detainer suit where defendants denied plaintiff's right to possession of property acquired at foreclosure sale under deed of trust, and claimed property solely under will of mortgagor, which contained same description as deed of trust, and executed an extension contract and note, and accepted surplus money from foreclosure sale, pursuant to an agreement, *held* estopped from claiming that property which they occupied was not same as that described in deed of trust.

5. UNLAWFUL DETAINER: Evidence That Defendants Had no Other Property, Held Properly Admitted Where it Tended to Prove That it Was the Same Property as That Claimed by Plaintiff. In an unlawful detainer suit where the issue was whether property occupied by defendants and described in deed of trust was one and the same piece of property as that claimed by plaintiff, court had a right to hear evidence that defendants had no other property in locality where particular property was situated.

6. APPEAL AND ERROR: Annulment of Judgment as to Surety on Appeal Bond after Lapse of Term, Insufficient to Justify Reversal of Case Where Appellants Were Not Harmed Thereby. In unlawful detainer suit appealed by defendants to circuit court, order of annulment of judgment as to surety on appeal bond after lapse of terms did not harm defendants or have the effect of annuling judgment as to them, and under section 1513, Revised Statutes 1919, was insufficient to justify reversal of case.

*Corpus Juris-Cyc. References; Appeal and Error, 4 C. J., p. 880, n. 96; p. 1176, n. 53. Estoppel, 21 C. J., p. 1202, n. 21; p. 1212, n. 7. Evidence, 22 C. J., p. 912, n. 23. Forcible Entry and Detainer, 26 C. J., p. 860, n. 57 New; p. 861, n. 95.

Appeal from the Circuit Court of Jackson County.
—*Hon. Thos. Buckner,* Judge.

AFFIRMED.

*German & Hull* for respondents.

*James A. Kemper* and *S. J. McWilliams* for appellants.

TRIMBLE, P. J.—This is a suit in unlawful detainer. Anna B. Halleran was the record owner by title in fee simple of the north half of lot 5, Campbell's Addition to Westport, now Kansas City, Missouri, and on May 17, 1911, jointly with her husband, executed a deed of trust thereon to Lex McDaniel, Trustee for the Westport Avenue Bank, to secure a note for $1000.

On the 24th of December, 1911, Mrs. Halleran died leaving a last will and testament, which was duly probated, wherein she devised ''the north one-half of lot 5, Campbell's Addition to Westport, now a part of Kansas City'' to her four children named therein, in equal parts, of whom the defendant Claude T. Halleran is one, and his sister, Marie Halleran, is another. Anna B. Halleran's husband died in 1917 or 1918.

The note was not paid but ran along for some time. It would seem from the record that Claude Halleran and his sister Marie obtained an assignment or an extension of the note. At any rate, on September 10, 1920, the two executed to the bank their note for the amount of the mortgage note and accrued interest, and in a written instrument pledged the above-mentioned note and deed of trust to the bank with full power in the bank to foreclose and sell said real estate if said note were not paid.

No effort being made to pay the note, the Bank requested the trustee to foreclose, and in due and proper form he did so, and the property was sold at foreclosure sale on May 4, 1921, respondents buying it at such sale

for the sum of $2375 cash, and a Trustee's Deed in due and regular form was made to them.

After the foreclosure, however, defendant Claude T. Halleran and his wife refused to surrender possession of the property, whereupon, after demand for possession, this suit in unlawful detainer was brought.

The case originated, of course, in a justice court, went from there to the circuit court where it was tried by Division One without a jury, and after the evidence was heard, judgment was rendered at the May term, June 16, 1923, the record of which adjudges that plaintiffs have restitution of the property and recover of defendants the sum of $1225 as damages and $50 per month from June 16, 1923, until restitution be made, as rents and profits, and that defendants' appeal bond being for only $1200, plaintiffs' recover of the surety thereon only $1200, and that execution issue.

At the September term, October 6, 1923, the court, before passing on defendants' motion for new trial, all parties appearing, found from the minute entries of the court and clerk that no judgment was rendered against the surety on defendants' appeal bond, but that when the final record entry was prepared by counsel and handed to the clerk, such entry included such judgment on the appeal bond by mistake, and the court struck out of and eliminated from the record of the judgment all that part in reference to a judgment on the appeal bond. Thereupon the defendants' motion for new trial and in arrest were overruled and the defendants appealed.

It is conceded that Anna B. Halleran lived in the house on the premises known as 4111 Penn street, which adjoins or is immediately south or southeast of a certain alley which will be hereinafter more particularly mentioned; that after the death of Anna B. Halleran and her husband, the defendants, Claude T. Halleran and his wife, lived in the residence property occupied by said Anna B. Halleran and continued to occupy the same up to and after the institution of this suit.

There is no complaint made as to any defect, irregularity, or imperfection in the deed of trust, or its foreclosure, by which plaintiffs obtained title to the land conveyed thereby. The trust deed and trustee's deed are in the usual form and describe the following real estate as being situate in Jackson county, Missouri, to-wit: "All of the north half of lot five (5), in Campbell's Addition to Westport, now a part of Kansas City, Missouri, as recorded in office of recorder of deeds (at Kansas City) for Jackson county, Missouri." The only foundation for defendants' refusal to surrender possession of the premises is their contention that the premises they occupy and hold (concededly constituting the premises known by the city street numbers as "4111 Penn street"), do not constitute the north half of lot 5, Campbell's Addition to Westport, but form the north portion of lot 4 in said Addition. In other words, their contention is that the description in the deed of trust, namely, the north half of lot 5, Campbell's Addition is not the correct, *dedicated-by-plat,* description of the premises known as 4111 Penn street but that the same are really the north part of lot 4, and therefore no title to the premises withheld passed by the foreclosure to plaintiffs. The complaint and judgment describe the north half of lot 5, Campbell's Addition and the premises known as 4111 Penn street in Kansas City as one and the same piece of ground. So that the only question is whether they are the same or not.

To properly understand the contention involved, it may be well to state some preliminary facts: A town plat of Westport with the certificate thereon of Sam'l C. Owens, circuit clerk and *ex officio* recorder, that John C. McCoy acknowledged it to be his free act and deed, was filed and recorded in the recorder's office of Jackson county, February 13, 1835, Record Book C., page 328. This plat shows Main street running northwest and southeast. Cutting into the southeast side of said plat is a tract with its west line running due north and its north line running due east, the angle formed by said two lines being located near the east side of and perhaps

two-thirds of the way from the top of lot 21, which tract evidently did not belong to McCoy and is marked on the plat as ''Campbell's part of Westport.'' Lots 20 to 23 on said plat of Westport thus appear to be platted up to the lines of said ''Campbell's part'' and therefore have irregular boundaries the same as they would appear with the northwest corner of Campbell's tract overlapping, cutting into, or superimposed upon, the plat. An alley running southwest along the southeast ends of lots 24 and 23 stops at the north line of the tract marked ''Campbell's part'' but reappears again at the west line of the Campbell tract and continues southwest along the end of lot 21 until it opens into Main Street running southeast as heretofore stated.

The southeast portion of said plat of Westport showing the aforesaid lots located with reference to the tract called ''Campbell's part of Westport'' will more readily appear from the following diagram thereof, to-wit:

A plat having no name or title, but which all parties to this suit recognize and call "Campbell's Addition to Westport" was filed in the recorder's office of Jackson county *at Independence* on March 18, 1835, and recorded in Book O., page 1. It bears no signature of Campbell, but does carry a certificate of Samuel C. Owens, clerk of the circuit court, that John Campbell acknowledged it; and on it Samuel H. Irwin, county surveyor of Jackson county, certified that "having been employed by John Campbell, proprietor of the Town of Westport" to survey thirty acres of land and to lay off lots thereon, "I have surveyed said thirty acres of land, *and did lay off a number of lots on it, to-wit, as numbered on the within plat from 93 to 113* and that the within plat exhibits a true and correct view of said thirty acres of land and *lots as surveyed by me.*" There is nothing on this plat to show the boundaries or shape of said thirty acres. Nor is any beginning point indicated thereon. The diagram of the lots is located within a square formed by lines, the southwest corner of which is so marked as to indicate that it is the Southwest Corner of "section 20," but the distance from said corner is not given nor are there any dimensions marked on the lots. Indeed, it is manifest on the face of the plat that the diagram is not drawn to a scale, since in a column of figures at the lower right-hand corner of the plat the areas of each of the lots 93 to 113 are given in terms of "square poles" but the areas as thus given do not at all correspond relatively in size as indicated by the diagram of the lots. For instance, the relative size of some of the lots, as indicated by the diagram, are more than twice the size of others and yet the areas given in "square poles" is but little different while other lots which from the diagram appear to be of the same size are shown in terms of area to be greatly different.

"Main street" is shown on this plat as running northwest and southeast at the same angle of direction as "Main Street" shown on McCoy's plat of Westport. The plat of Campbell's Addition also shows a street

called "Archibald street" running northeast and south-west crossing Main street at right angles, and extending to the northeast side of the diagram. Lot 93 is south or southeast of and immediately adjoining that part of Archibald street which is southwest of Main street. And south of and immediately adjoining that part of Archibald street which is northeast of Main street appears the diagram of two lots marked respectively 9 and 10, the latter lying lengthwise in the same direction and east of lot 9, with an alley running northwest and southeast between their adjoining ends. On the north or northwest side of Archibald street and southwest of Main street appears a diagram of a three-cornered lot marked 3, and across Main street on the northwest side of Archibald street, opposite the diagram of lots 9 and 10, appear the diagrams of lots marked 8 and 7, the latter being north-east of 8 and their adjoining ends likewise separated by the aforesaid alley. Northwest of and adjoining 7 appears the diagram of a lot marked 6 while northwest of and adjoining 8 is the diagram of a lot marked 5, and northwest of and adjoining 5 is the diagram of still another lot marked 4. Along the northwest side of the diagram of 4 appears the beginning of an alley which runs northeast from Main street across the west and north sides of the square formed by the lines of the square heretofore mentioned. (This alley corresponds in direction with the alley shown on McCoy's plat of Westport.) Northwest of said alley, and within the angle formed by the north and west lines of said square aforesaid, is a triangular piece formed by said lines and the line of said alley.

The situation above attempted to be described will more readily appear from the following diagram, to-wit:

There is no question but that the premises known as "4111 Penn street" occupied and held by defendants, lies alongside of and immediately adjoining the alley running southwest into Main street, or Penn street as it is now called; and the entire basis of defendants' contention is that the above-mentioned recorded plat of Campbell's Addition to Westport shows *that said premises is the north half of lot 4 instead of the north half of lot 5.* (We will discuss later the question of whether the diagram last-above set out is to be considered as a correct, or even an integral, part of the recorded plat of Campbell's Addition.)

Plaintiffs introduced the evidence of surveyors of long experience and many years' acquaintance, and who had actually made surveys of the locality in question

and they show that, as *actually surveyed* and *existing on the ground,* McCoy's Addition to Westport and Campbell's Addition to Westport are located relatively to each other *on the ground,* as shown by the following diagram:

The evidence in plaintiffs' behalf is further that from records of old surveys of the ground made in years gone by and which were followed and consulted by the surveyors in testifying and in making their surveys, the lots are numbered as above shown, and that the alley running southwest from McCoy's plat of Westport across the corner of Campbell's part of Westport to Main street, or Penn street as it is now called, lies along the northwest side of lot 5, Campbell's Addition; and that the house known as "4111 Penn street" is located, by actual survey, and is found to be, on the north half of said lot 5.

The evidence is undisputed that Anna B. Halleran lived with her family at 4111 Penn street, with the alley adjoining the northwest side of her lot; that after

her death defendants continued to live in said premises and now withhold and refuse to surrender possession thereof. The will of Anna B. Halleran, under which defendants claim, recites that testatrix is "now living at 4111 Penn street, in Kansas City, Jackson County, Missouri;" and the property therein devised to her four children, of whom defendant Claude T. Halleran is one, is described in said will as the "north one-half of lot 5, Campbell's Addition to Westport, now a part of Kansas City."

Furthermore, appellants concede in their brief that. Anna B. Halleran and her husband, "prior to and on the 17th day of May, 1911, *were the record owners* of 'all of the north half of lot 5, in Campbell's Addition to Westport.' " They say, however, that her home was at 4111 Penn street, which "according to Campbell's plat of Westport" is located on the north portion of lot 4 south of an alley of said addition. The evidence is undisputed, though objected to by defendants, that Anna B. Halleran owned no other real estate on that side of Penn street, except the house in which she lived, known as 4111 Penn street; that at the time Anna B. Halleran executed the deed of trust under the foreclosure of which plaintiffs claim, she owned no other real estate on that side of the street or in that vicinity and that 4111 Penn street was the only property she could and did mortgage. The extension note and contract made at the request of defendant Claude T. Halleran, and signed by him, recites that the mortgage is "on place at 4111 Penn street, Kansas City, Mo."

In fact the evidence is amply sufficient to support the judgment of the court which finds that 4111 Penn street and the north half of lot 5, Campbell's Addition, are one and the same tract of ground, unless the plat of Campbell's Addition to Westport *conclusively,* or as a matter of law, shows that it is not. Unless said plat shows conclusively to the contrary, then the finding and judgment of the court should not be disturbed. [De-

Graw v. Pryor, 68 Mo. 158; Dausch v. Crane, 109 Mo. 323.]

So far from the plat of Campbell's Addition to Westport being conclusive of the case or controlling as a matter of law, we do not think that it can be considered as a survey of lot 5 at all. The plat shows on its face that the lots surveyed and dealt with therein are not the lots in the locality in question, but are lots 93 to 113. It is only these last-mentioned lots whose areas are given; and, in addition to the other defects and insufficiencies appearing on the face of the plat as hereinbefore noted, it would seem to be manifest from the plat that the diagram of lots in the locality in question was not intended to be properly a part of the plat or lots then dedicated by that instrument inasmuch as they are not mentioned and their areas are not stated, their dimensions are not given, and all but one or two of them have the names of individuals marked thereon, as if already owned by others at the time the plat was made. If so, then such lots had been marked out on the ground and sold to the respective persons whose names appeared thereon according to some former plat or otherwise, *before* the dedication of the lots dealt with and surveyed in this plat. Said Campbell's plat, therefore, cannot be regarded as dealing with lots 4 and 5 at all, or as fixing by that instrument their location and boundaries. It is no more than an outlying diagram of *lots* shown adjacent to those intended to be, and in fact, dedicated by the instrument, much as a map of a country or district oftentimes shows in outline territory adjacent thereto, but of which the instrument is not a map nor was it intended to be. The evidence is that there is no dedicated plat of Campbell's Addition to Westport of record in the recorder's office of Jackson county, Missouri, at Kansas City, and no other dedicated plat of Campbell's Addition at Independence, other than the one above referred to, and it on its face purports to be only a survey of lots 93 to 113 and not of any others. It is in evidence that no survey can be made on the

ground which will correspond to the outline of the lots 4 and 5 or those in that immediate vicinity; and that no data appearing on said Campbell's plat will enable surveyors to locate said lots, but that for years successive plat books have been in existence in the recorder's office compiled from old records of former surveys showing lots 4 and 5 numbered and located as shown on the diagram last above herein shown, and which platbooks or plats were generally recognized and used by conveyancers and authorities generally in dealing with land matters there. The chain of title whereby Anna B. Halleran became the "record owner" of the north half of lot 5, Campbell's Addition to Westport, does not appear in the record, but since it is *conceded* she was the record owner thereof, and since the lot she occupied is the *only one* she owned or claimed to own in that locality and the only one she intended to and did mortgage, it would seem to be a permissible inference that her title came by regular conveyances describing the property as being lot 5 and not lot 4. In other words, in view of the conceded fact that she is the "record owner" of the north half of lot 5, the inference is that by the deeds throughout former years down to Anna B. Halleran, the parties owning the property during those times, and conversant with the situation, dealt with and recognized it as being lot 5 and as being located southeast and alongside of the alley as marked out upon the ground. And since this coincides and agrees not only with the surveys actually made upon the ground but also with the acts and understanding of all the parties having to do therewith, and of all connected with this case, at least until defendants' contention herein arose, it is not seen how it can be said that the plat of Campbell's Addition to Westport, limited as it expressly is to a survey of other lots, and manifestly incapable of giving the definite location, size, or dimensions of lots 4 and 5, can be said to conclusively establish the fact that the true plat number or dedicated number of the lot lying

alongside the alley, and now known as 4111 Penn street, is lot 4 instead of lot 5.

This is not a case where there is a dispute as to a boundary line between two pieces of property and where the question is whether one has a portion of the property claimed by the other. It is simply whether the property withheld by one should rightfully be in the other's possession. Nor is there any doubt about the principle that one cannot dispute or change the boundaries of property which have been fixed and determined by a recorded plat under and in conformity to which a party holds property. Such principle is no doubt thoroughly established and recognized by cases like Laddonia v. Day, 265 Mo. 383; Lindsay v. Smith, 166 S. W. 820; and Longworth v. Sedavic, 165 Mo. 221, but they are not deemed to be applicable here. Neither is there any principle of estoppel operating against plaintiffs such as existed in Macom v. Brewster, 201 S. W. 547; Wright v. City of Joplin, 204 S. W. 910. This for the reason that, as we view it, the so-called plat of Campbell's Addition to Westport does not purport to deal with lots 4 and 5 and the diagram of such lots cannot, in any actual survey of the ground, be made to correspond with the lots as actually existing.

The surveys offered by defendants and which the court excluded were properly excluded. In the first place, they did not purport to be surveys of lot 5 nor of 4111 Penn street, and in the second place, the surveyor who made one of them was not produced nor did he testify, and the survey was not of itself evidence of its own authenticity since the surveyor in making it did not comply with the provisions of section 12721, Revised Statutes 1919, which are requisite to make the survey admissible in and of itself. [Laddonia v. Day, 178 S. W. 741.] So far from plaintiffs being estopped from claiming that 4111 Penn street is the north half of lot 5, we think that defendant, Claude T. Halleran, is estopped to claim otherwise and the other defendant has no interest save her inchoate interest as his wife, and her in-

terest, if any at all, is derivable solely through him. He does not profess to own any property save that which he claims under his mother's will. His mother owned no other property except the property next to the alley known as 4111 Penn street and of which she was the *record owner* by the description of the north half of lot 5, and she willed it to defendant Claude T. Halleran by that same description. So that his right to the property in controversy depends upon the same description as that under which plaintiffs claim it. His mother, prior to willing it to him, mortgaged it to the bank. In other words, the source of the title asserted by both sides of this controversy is the same and passed by the same description to each. In addition to this, in the extension contract and note signed by defendant Claude T. Halleran, the deed of trust for $1000 executed by his mother on May 17, 1911, is described as covering the property "at 4111 Penn street., K. C., Mo." The deed of trust recites that first parties are tenants of the second party until a sale be had; and if this be true, then neither Anna B. Halleran, nor defendants who claim under her, can dispute the right or interest of the bank in the property therein described, and ought not to dispute the title of the plaintiffs who obtained it under a foreclosure the validity of which is not questioned. [Shepard v. Martin, 31 Mo. 492.] On top of all this, it appears from evidence submitted in support of a motion to dismiss the appeal on the ground that the case since the appeal was taken has become moot, which evidence is not disputed but inferentially admitted, that on the 23rd of September, 1924, the trustee in the deed of trust, in making distribution of the surplus in his hands from the foreclosure sale of the property, paid to defendant, Claude T. Halleran, the sum of $230.71 as his share of such surplus, which he accepted pursuant to a written agreement signed by him directing the trustee to issue him a check for his share of "the moneys representing the residue of my mother's and father's property, under deed of trust duly executed by them, on the

property known as 4111 Penn street, Kansas City, Missouri, the same being described as the north half of lot five (5), Campbell's Addition to Westport, now Kansas City, Missouri." It would seem that after having accepted his share of the surplus moneys arising from a foreclosure sale of the property in question it is not a matter of interest to him whether the property be correctly described in the deed of trust or not, and this too without regard to whether or not his action subsequent to the appeal did or did not conclusively make the case one of moot character.

It is urged that in this case of unlawful detainer the court had no right to hear evidence as to the Hallerans having no other property in that locality or that 4111 Penn street was the property they lived in and intended to and did mortgage, this for the reason that the reception of such evidence is, in effect, to try the title to the property, whereas such action is one in which the right of possession and not the title is tried. We think, however, that since the so-called plat of Campbell's Addition to Westport did not conclusively determine the issue involved, the trial court had a right to hear any evidence which would legally tend to prove the issue of fact involved herein. That issue was whether 4111 Penn street and the north half of lot 5, Campbell's Addition, are one and the same piece of property. If they are, then plaintiffs were entitled too prevail. Since plaintiffs' right to possession depended upon what property was involved, the court had a right to hear evidence throwing light on that feature. Hood v. Mathis, 21 Mo. 308; Hafner Mfg. Co. v. City of St. Louis, 262 Mo. 621, 633, where LAMM, J., says:

"A main part of plaintiff's brief is devoted to discussing the general rule of law that in actions under the forcible-entry-and-retainer statute title is not an issue. That generalization must be taken in the sense that title is not tried out as a determinative factor, and with the observation that it, like other general rules,

has its modifications made necessary to meet the full ends of justice in each case."

If there was any error in striking out the judgment against the surety on the appeal bond after the lapse of the term, we are unable to see wherein the appellants were harmed or how it would justify the reversal or remanding of the case. The judgment against appellants remained at all times the same and was in no way changed. The order of annulment of the judgment as to the surety did not have the effect of annulling the judgment as to defendants. [Crowe v. Williams, 104 Mo. App. 451, 454.] The statute forbids the reversal of cases for such purely technical errors as do not materially affect the substantial rights of the parties. [Sec. 1513, R. S. 1919.]

We are of the opinion that the judgment should be affirmed, and it is so ordered. All concur.